{¶ 38} Being unable to concur in the majority opinion, I must respectfully dissent. However, I do concur with the result reached, with respect to the first assignment of error, but for vastly different reasons from those set forth in the majority opinion. However, with respect to the second assignment of error, I would sustain that assignment of error and remand the matter to the trial court for further proceedings.
 {¶ 39} There are many facts and circumstances in addition to those set forth in the majority opinion which must be considered for a full understanding and *Page 21 
determination of the issues raised in this case. Probably the linchpin is the choice of law provision set forth in the MSA. The MSA specifically provides that the law of the Settling State involved in a dispute or litigation must be applied in interpreting the contract, the Consent Decree, the Qualifying Statute of that state, and in interpreting and enforcing the MSA. Thus, there are some 50 different state laws that must be applied separately to each of the Settling States. This obviously will result in some disparity decisions because the law of the various states do differ. It also makes less useful references and consideration of decisions made by the MSA court of other states as to any issue that may be involved herein because, presumably, those decisions of the other Settling States MSA court reflect the law of the other Settling States, but not necessarily the law of Ohio. It must be borne in mind that decisions by the MSA court of Ohio must be made using Ohio law. Likewise on appeal, this court is required to follow and apply Ohio law to the issues raised.
 {¶ 40} Also must be borne in mind, the status of the Independent Auditor's calculations and determinations made with respect to the payments to be made by the PMs in the year 2003, the year involved in this case. Because of the time taken for a requisite determination to be made by the Firm, and the requisite calculations to be made by the Independent Auditor, the payments to be made by the tobacco companies for the year 2003 did not become due until April 17, 2006. However, the Independent Auditor has made all the calculations necessary to be made by an Independent Auditor with respect to the preliminary calculations and the final calculation or determination, which was made by the Independent Auditor on March 29, 2006. No issue is raised herein with respect to the calculations made by the Independent Auditor either in the *Page 22 
preliminary calculations or in the final calculations. Accordingly, there is no issue as to whether the Independent Auditor's final calculations or determinations are mathematically or otherwise correct. Rather, the only issue is with respect to an assumption made by the Independent Auditor with respect to whether the Settling States had individually and separately enforced their respective Qualifying Statute, if one had been adopted by that state.
 {¶ 41} As indicated, the Independent Auditor made all the calculations and determinations necessary to determine the amounts to be paid by each of the PMs for the year 2003 and made all of the calculations and determinations of how much each of the Settling States should receive from the total payments to be made by the PMs. The Independent Auditor also calculated and determined the amount of the NPM adjustment to which each of the PMs is entitled for the year 2003 and fully allocated the NPM adjustment among the several states making all the calculations and determinations necessary and indicating the dollar amount of the NPM adjustment that should be charged against each of the Settling States. No objections have been expressed with respect to any of these calculations, determinations or allocations made by the Independent Auditor, and they are final except that they are subject to change if new evidence or additional evidence is presented to the Independent Auditor necessitating a change within four years after the specified due date for payment.
 {¶ 42} The dispute, and only dispute, which is the subject of this litigation involves an assumption made by the Independent Auditor that all Settling States had diligently enforced their respective Qualifying Statutes. The MSA requires the Independent Auditor to make an assumption with respect to any matter upon which the *Page 23 
PMs and Settling States have failed to present sufficient evidence to the Independent Auditor. The assumption the Independent Auditor made and which is the issue herein, is an assumption that all the Settling States had separately and individually diligently enforced their respective Qualifying Statute. The PMs disputed the Independent Auditor's assumption, contending that, instead, the Independent Auditor should have assumed that none of the Settling States have diligently enforced their respective Qualifying Statute during the preceding calendar year.
 {¶ 43} The PMs had also contended before the Independent Auditor that some of the Settling States had not adopted a Qualifying Statute and that some of the Settling States had not diligently enforced its Qualifying Statute, but did not identify any single state which it contended either had not adopted a Qualifying Statute or had not diligently enforced its Qualifying Statute. More importantly, the PMs have never directly and expressly contended that the state of Ohio did not diligently enforce its Qualifying Statute during the year in question. Nowhere in its motion to compel nor in any pleading has any PM expressly and explicitly contended that Ohio did not diligently enforce its Qualifying Statute during the year in question. Rather, the PMs have merely contended that the matter of diligent enforcement should not be determined by the Ohio MSA court but, instead, should be determined by the Board of Arbitrators who would decide whether or not the assumption the Independent Auditor made is a proper assumption with respect to the diligent enforcement issue as it applies to each of the Settling States.
 {¶ 44} If the Independent Auditor's assumption that all the Settling States had diligently enforced their respective statute is a proper assumption, there would be no *Page 24 
need for any further determination by the Board of Arbitrators as to whether Ohio had diligently enforced its Qualifying Statute because the Independent Auditor's assumption that all Settling States had would still be in effect. If, on the other hand, the Board of Arbitrators determines that the Independent Auditor should have assumed that none of the Settling States had diligently enforced their respective Qualifying Statute, then the matter also is closed without need for any further determination by the Independent Auditor. Rather, in either instance, a determination by the Ohio MSA court as to whether Ohio diligently enforced its Qualifying Statute during the year in question will be necessary and required by the MSA. If the Board of Arbitrators determines that the Independent Auditor made the wrong assumption and should have assumed that none of the Settling States had diligently enforced its statute, there will be some additional work for the Independent Auditor that will not affect any of the calculations or allocations made by the Independent Auditor with respect to the NPM adjustment, but, instead, would only permit the PMs to withhold the amount of the NPM adjustment from each of the Settling States in accordance with the calculations already made by the Independent Auditor until such time as it is established by the respective MSA court which states did diligently enforce their respective statute and which states did not, assuming that there are any. This is the issue that necessarily must be taken to the MSA court of the individual Settling States with respect to each of the Settling States.
 {¶ 45} There are also many provisions of the MSA which must also be considered because they pertain to the issues raised herein. However, rather than repeat them at this stage, they will be mentioned in connection with the discussion of the two assignments of error. Such discussion will be separately made with respect to *Page 25 
each of the two assignments of error because of the differences in the two assignments of error.
 {¶ 46} The first assignment of error raises only the issue of whether the trial court erred in finding that the 2003 Settlement Agreements between the Settling States and the PMs do not preclude the PMs from contending that the NPM adjustment should be applied for the year 2003. No other issue is raised by the first assignment of error, nor have the PMs raised any cross-assignment of error or conditional assignment of error with respect to any other issue. The second assignment of error raises the crucial issue involved herein as to whether or not the issue of whether each individual state diligently enforced its respective Qualifying Statute during the year in question should be submitted to arbitration as an adjunct to the arbitration of the issue of whether the Independent Auditor made a proper assumption that all Settling States had diligently enforced their respective Qualifying Statute or whether the Independent Auditor should have made an assumption that none of the Settling States had diligently enforced its respective Qualifying Statute. That is the only dispute which the PMs have made and certified to the Independent Auditor as being a dispute between the parties, although there were several other objections made by the PMs to the preliminary calculation which were addressed by the Independent Auditor in the final calculation.
 {¶ 47} The release motion and the briefs in support thereof all indicate that the sole issue appealed by the first assignment of error was the issue of whether the Ohio MSA trial court correctly determined that the 2003 Settlement Agreements between the PMs and the Settling States incorporated the arbitration clause of the MSA. The only issue raised by Ohio in support of the first assignment of error is its contention that the *Page 26 
Ohio MSA court erred in finding that the MSA arbitration provision § XI(c) is incorporated into the 2003 Settlement Agreements.
 {¶ 48} There is no express provision or other language in the 2003 Settlement Agreements incorporating the MSA arbitration clause or even implying such incorporation. Instead, the 2003 Settlement Agreements contain an express provision that the 2003 Settlement Agreements are complete within themselves and "is not subject to any condition not provided for herein, and supersedes any purportedly contemporaneous oral agreements and understandings relating to such settlement[s]."
 {¶ 49} References in the Settlement Agreements to the MSA do not necessarily integrate the MSA arbitration clause into the Settlement Agreements because references in one document to a second document do not necessarily integrate the two documents. "[A] reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified."Guerini Stone Co. v. P.J. Carlin Constr. Co. (1916), 240 U.S. 264, 277. The 2003 Settlement Agreements provide, as follows:
 This Settlement Agreement contains an entire, complete and integrated statement of each and every term and provision agreed to by and among the parties hereto relating to the settlement of the NPM Adjustment Disputes, is not subject to any condition not provided for herein * * *
2003 RJR Agreement, ¶ 14; 2003 Brown Williamson Agreement, ¶ 21.
 {¶ 50} The agreements specify that it is the entire agreement. If the parties had intended to integrate the arbitration clause of the MSA, they certainly could have done so. The 2003 Settlement Agreements do not contain an arbitration clause. The absence of an arbitration clause and the absence of an express incorporation of the *Page 27 
MSA arbitration clause indicate an intention not to make the MSA arbitration clause a part of the 2003 Settlement Agreements. Accordingly, there is no basis for incorporation of the MSA arbitration clause into the 2003 Settlement Agreements, I believe the Ohio MSA court erred in incorporating the MSA arbitration clause into the 2003 Settlement Agreements.
 {¶ 51} However, the error of the trial court in incorporating the MSA arbitration clause into the 2003 Settlement Agreements is not prejudicial because the release motion is not ripe for determination. As indicated in the discussion in the majority opinion with respect to attempting to justify arbitration of the diligent enforcement motion, as to Ohio, the "release motion" cannot be determined unless and until it is determined whether or not Ohio diligently enforced its Qualifying Statute during the calendar year immediately preceding the year the payment was to be made by the PMs. A determination by an arbitration panel that the Independent Auditor made the wrong determination will not resolve the issue of whether Ohio diligently enforced its Qualifying Statute. If an arbitration panel is created and the Independent Auditor's assumption is referred to it for arbitration, a decision of the arbitration panel that the Independent Auditor should have assumed that no state had diligently enforced its Qualifying Statute, will not resolve the issue of whether Ohio had diligently enforced its Qualifying Statute. In other words, the release motion is premature because whether or not the PMs should "pay" to Ohio the disputed funds paid into the escrow account pursuant to MSA § IX(a) and XI(g) cannot be determined unless and until it is determined whether or not Ohio diligently enforced its Qualifying Statute, which determination should be made by the MSA court. *Page 28 
 {¶ 52} However, there is also another reason why the release motion should be found not properly before the MSA court. MSA § XI(d)(2) provides that the Independent Auditor shall instruct the escrow agent to credit funds from an account to the Disputed Funds account when a dispute arises as to such funds, and shall instruct the escrow agent to credit funds from the Disputed Payment account to the appropriate payee when such dispute is resolved with finality.
 {¶ 53} MSA § IX(a) provides that all payments, pursuant to the MSA (except those payments made pursuant to § XVII), shall be made into escrow pursuant to the escrow agreement and shall be credited to the appropriate account established pursuant to the escrow agreement. MSA § VII(e) provides that the escrow court shall have exclusive jurisdiction over any suit, action or proceeding seeking to interpret or enforce any provision of or based upon any right arising out of the escrow agreement. Therefore, the escrow court is the appropriate court to determine the issue raised by the release motion. For these reasons, I concur in the overruling of the first assignment of error.
 {¶ 54} The second assignment of error raises the issue of whether the trial court erred in dismissing the diligent enforcement motion as moot because the Ohio MSA court found that the diligent enforcement motion was so related to the dispute which is the subject of the PMs' motion to compel that the limited arbitration clause of the MSA makes diligent enforcement a part of the arbitration of that dispute. Not only does the arbitration clause not require arbitration of diligent enforcement, but when the entire MSA is considered and all the provisions thereof given full credence, the MSA precludes arbitration of the diligent enforcement issue. *Page 29 
 {¶ 55} The arbitration clause of the MSA is limited to calculations and determinations of the Independent Auditor, including the calculations and allocations of the NPM adjustment. This case does not involve any dispute as to the calculation of the NPM adjustment nor the allocation of the NPM adjustment either among the PMs or among the Settling States. As the majority opinion points out, the MSA sets forth a 13-step process that the Independent Auditor must follow in calculating the amount that the PMs must pay each year and in calculating the amount of the NPM adjustment for any year in which the Firm finds the PMs reduction in market share because of sales by NPMs was substantially the result of the restrictions upon the PMs set forth in the MSA. After the NPM adjustment is calculated, it then is allocated among the PMs and among the Settling States. The Independent Auditor made all the calculations and determinations necessary and allocated the NPM adjustment both among the PMs and the Settling States. No issue is raised herein with respect to those calculations, determinations, and allocations. Nor does the dispute, which is the subject of the PMs' motion to compel, involve any of such calculations, determinations or allocations. Nor have any of the PMs sought arbitration of any such calculations, determinations, and allocations made by the Independent Auditor.
 {¶ 56} The duty and responsibility of the Independent Auditor is set out in MSA § XI(a) and includes five functions, the first four of which are "to calculate and determine":
 1. "[T]he amount of all payments owed pursuant to this Agreement * * *."
 2. And "the adjustments, reductions and offsets thereto (and all resulting carry-forwards, if any) * * *." *Page 30 
 3. And "the allocation of such payments, adjustments, reductions, offsets and carry-forwards among the Participating Manufacturers and among the Settling States * * *."
 4. And "perform all other calculations in connection with the foregoing (including, but not limited to, determining Market Share, Relative Market Share, Base Aggregate Participating Manufacturer Market Share and Actual Aggregate Participating Manufacturer Market Share)."
(Emphasis added.) The fifth function is to "collect all information necessary to make such calculations and determinations." If an issue is not included within the express language of MSA § XI(a), the Independent Auditor has no duty or responsibility to make a calculation or determination of that issue unless it is conferred by the express language of another provision of the MSA. Because neither exemption from the NPM adjustment nor diligent enforcement are mentioned in § XI(a), the Independent Auditor has no duty nor responsibility to make a determination regarding exemption or diligent enforcement. The arbitration clause limits arbitration to issues the Independent Auditor has the duty or responsibility to calculate or determine. Since the Independent Auditor has no duty nor responsibility to determine the exemption/diligent enforcement issue, that issue is not subject to arbitration.
 {¶ 57} What is involved in the diligent enforcement motion is the exemption granted to a Settling State from the NPM adjustment otherwise allocated to it if the Settling State had in force and effect a Qualifying Statute under the MSA and diligently enforced that Qualifying Statute during the calendar year preceding the year in which the PMs were required by the MSA to make payment pursuant to the calculations and determinations of the Independent Auditor. Thus, MSA § IX(d)(2)(B) specifically provides that a Settling State is exempt from the NPM adjustment, as follows: *Page 31 
 A Settling State's Allocated Payment shall not be subject to an NPM Adjustment: (i) if such Settling State continuously had a Qualifying Statute * * * in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during such entire calendar year; or (ii) if such Settling State enacted the Model Statute * * * for the first time during the calendar year immediately preceding the year in which the payment in question is due, continuously had the Model Statute in full force and effect during the last six months of such calendar year, and diligently enforced the provisions of such statute during the period in which it was in full force and effect.
 {¶ 58} If a Settling State satisfies both of these requirements, the amount of the NPM adjustment that was allocated to that state by the Independent Auditor's final calculation is later to be reallocated by the Independent Auditor among the Settling States which either did not enact a Qualifying Statute or did not diligently enforce such statute during the preceding calendar year. MSA § IX(d)(2)(C). The Independent Auditor made an assumption that all states had diligently enforced their respective Qualifying Statute. Under such assumption, the NPM adjustment cannot be given effect with respect to any specific Settling State unless and until the appropriate trier of fact separately, as to that Settling State, determines whether that state had or had not diligently enforced its Qualifying Statute. The MSA clearly and unequivocally provides that the MSA court of each state is the appropriate trier of fact of that issue with respect to that state.
 {¶ 59} The PMs contend that, instead of having the separate determinations of whether each Settling State diligently enforced its Qualifying Statute during the preceding year, the determination should be made by the Board of Arbitrators, which will arbitrate the issue of whether the Independent Auditor properly assumed that all the *Page 32 
Settling States had diligently enforced their respective Qualifying Statute or whether the Independent Auditor should have assumed that no Settling State had diligently enforced its Qualifying Statute. The PMs contend that the MSA arbitration clause requires arbitration of the diligent enforcement issue because it is related to the NPM adjustment. However, the MSA arbitration clause (MSA § XI[c]) provides as follows:
 * * * Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. * * *
(Emphasis added.)
 {¶ 60} There are obvious flaws in the PMs' argument. First, the dispute is not over a calculation or determination made by the Independent Auditor, but, rather, is over a matter which he refused to determine, namely whether Ohio diligently enforced its Qualifying Statute during the year preceding the year in which the payment by the PMs was to be made pursuant to the Independent Auditor's final calculation. Secondly, the dispute does not concern the operation or application of any of the adjustments, reductions, offsets, carry-forwards or allocations made by the Independent Auditor in his final calculation. Third, the issue of diligent enforcement is not mentioned or described in either § IX(j) or XI(i) of the MSA. Rather, the dispute is over whether Ohio is entitled to an exemption from the NPM adjustment allocated to Ohio by the Independent Auditor in his final calculation because Ohio diligently enforced its Qualifying Statute during the year preceding the year in which payment was to be made by the PMs. Neither the *Page 33 
word "exemption" nor the words "diligent enforcement" are used anywhere in MSA § XI(c), the arbitration provision. Nor have the PMs made a certification that a dispute exists as to whether Ohio diligently enforced its Qualifying Statute during the year in question.
 {¶ 61} No mention is made in this arbitration clause of the either the NPM adjustment or the exemption from that adjustment, nor of diligent enforcement. The next subsection, § XI(d) is quite revealing. Subsection XI(d)(3) requires any PM or Settling State that disputes any aspect of the preliminary calculations to give notice "of such dispute, including the reasons and basis therefor" within 30 days. MSA § XI(d)(5)(A) is the provision requiring the Independent Auditor to make an assumption as to missing information and reads as follows:
 If the information in question is not readily available to any Settling State, any Original Participating Manufacturer or any Subsequent Participating Manufacturer, the Independent Auditor shall employ an assumption as to the missing information producing the minimum amount that is likely to be due with respect to the payment in question, and shall set forth its assumption as to the missing information in its Preliminary Calculation or Final Calculation, whichever is at issue. Any Original Participating Manufacturer, Subsequent Participating Manufacturer or Settling State may dispute any such assumption employed by the Independent Auditor in its Preliminary Calculation in the manner prescribed in subsection (d)(3) or any such assumption employed by the Independent Auditor in its Final Calculation in the manner prescribed in subsection (d)(6). * * * If the missing information does not become available to the Independent Auditor prior to the Payment Due Date, the minimum amount calculated by the Independent Auditor pursuant to this subsection (A) shall be paid on the Payment Due Date, subject to disputes pursuant to subsections (d)(6) and (d)(8) and without prejudice to a later final determination of the correct amount. If the missing information becomes available to the Independent Auditor after the Payment Due Date, the Independent Auditor shall calculate the correct *Page 34 
amount of the payment in question and shall apply any overpayment or underpayment as an offset or additional payment in the manner described in subsection (i).
 {¶ 62} Accordingly, only a dispute of which notice has been given by the PM or the Settling State making the dispute to the Independent Auditor can be recognized as a dispute within the contemplation of the MSA arbitration clause in § XI(c). Since the PMs did not give notice of any dispute as to the Ohio diligent enforcement issue, that issue cannot be subject to arbitration under the arbitration clause. The only notice given by the PMs pertains to the Independent Auditor's assumption that all Settling States had diligently enforced their respective Qualifying Statute. The PMs contend that the Independent Auditor should have assumed that no Settling State had diligently enforced its Qualifying Statute because the MSA requires the Independent Auditor to make an assumption as to the minimum amount due. Settling States on the other hand, have given notice to the Independent Auditor and PMs that they individually and collectively dispute the PMs' contention and, instead, contend that the Independent Auditor's assumption is the correct assumption. Therein lies the dispute, and only dispute, which is subject to arbitration under the MSA arbitration clause.
 {¶ 63} As to the issue of whether the state has adopted a Qualifying Statute, § IX(d)(2)(G), at page 67 of the MSA, provides that:
 * * * [T]he Firm shall be jointly retained by the Settling States and the Original Participating Manufacturers for the purpose of determining whether or not such statute, regulation, law and/or rule constitutes a Qualifying Statute. * * * The determination of the Firm with respect to this issue shall be conclusive and binding upon all parties, and shall be final and non-appealable; provided, however, * * * that the Settling State in which the Qualifying Statute was enacted and any Participating Manufacturer may at any time request that the Firm reconsider its determination as to this issue in *Page 35 
light of subsequent events (including, without limitation, subsequent judicial review, interpretation, modification and/or disapproval of a Settling State's Qualifying Statute, and the manner and/or the effect of enforcement of such Qualifying Statute). * * *
 {¶ 64} MSA § IX(d)(2)(H) provides that:
 Except as provided in subsection (2)(F), in the event a Qualifying Statute is enacted within a Settling State and is thereafter invalidated or declared unenforceable by a court of competent jurisdiction, otherwise rendered not in full force and effect, or upon reconsideration by the Firm pursuant to subsection (2)(G) determined not to constitute a Qualifying Statute, then such Settling State's Allocated Payments shall be fully subject to an NPM Adjustment unless and until the requirements of subsection (2)(B) have been once again satisfied.
 {¶ 65} The record does not reveal that Ohio nor any PM has sought a determination by the Firm as to whether Ohio's Qualifying Statute meets the MSA definition of a "Qualifying Statute." In the absence of a Firm determination, the Ohio Qualifying Statute must be deemed to meet the MSA requirements for a Qualifying Statute and the PMs have made no contention otherwise. This provision, with respect to the OPMs and a similar provision with respect to the SPMs, may indicate the reason why § IX(d) was listed as an exception in § VII(a) and related sections.
 {¶ 66} Despite the absence of any reference to diligent enforcement in the arbitration provision, MSA § XI(c), the PMs contend that the arbitration provision applies to the question of diligent enforcement because of the language referring to "any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i) * * *." As noted above, the word "exemption" is not included. The diligent enforcement issue pertains only to a state's exemption from the NPM adjustment as a reward for *Page 36 
diligently enforcing its Qualifying Statute during the year prior to the year payment is to be made. The reason § XI(c) is included in the exception listed in § VII(a) and related sections, is the last sentence of subsection (c), which reads that "[t]he arbitration shall be governed by the United States Federal Arbitration Act." That act does reference seeking review of an arbitration panel determination in the federal courts. The other provision listed in the exception clause of § VII(a) and related sections, is § XVII(d), which section pertains to the recovery of costs and attorney fees. It has no bearing upon the NPM adjustment nor whether a given state has diligently enforced its Qualifying Statute, but does contain a reference to Exhibit O, which may be the reason why it is included as an exception.
 {¶ 67} The PMs contend that the Independent Auditor failed to "apply" the NPM adjustment to the Settling States. Such argument is confused and misleading. When used in the sense the PMs contend the verb "apply" usually is followed by the preposition "to" or "for" they also use the noun "application" in the same sense. However, the verb "apply" is not used in either § XI(i) or IX(j). While the noun "application" is used in § XI(c), it is only in connection with applications of adjustments and allocations and allocations described in § XI(i) or IX(j). The key words are the noun "allocations" and verb "allocate" used in the subsection. As indicated, the Independent Auditor fully allocated the NPM adjustment among both the PMs and the Settling States, and no issue is raised by the PMs concerning those allocations. The MSA requires the Independent Auditor to allocate (distribute) the NPM adjustment among the PMs as a credit against their respective share of the gross payment the PMs collectively are required by the MSA to pay into the escrow account that year for the benefit of the *Page 37 
Settling States. The MSA then required the Independent Auditor to allocate (distribute) the NPM adjustment among the Settling States as a debit against each Settling State's share of that gross amount the PMs must pay into the escrow account for that year for the benefit of the Settling States. The sole dispute subject to arbitration is the issue of whether the Independent Auditor should have assumed that no state had enforced their Qualifying Statutes during the year in question rather than assuming that all states had diligently enforced their respective Qualifying Statute. The issue raised by Ohio in the trial court and in this court of appeals is whether Ohio is exempt from the NPM adjustment because it had in fact diligently enforced its Qualifying Statute during the year in question.[7]
 {¶ 68} The PMs' main contention appears to be that subsection (3) of § VII(a) provides that anything related to or in any way connected with a matter that may be subject to arbitration is excluded from the jurisdiction conferred upon the MSA court of each Settling State. MSA § VII(a) reads in its entirety as follows:
 Jurisdiction. Each Participating Manufacturer and each Settling State acknowledge that the Court: (1) has jurisdiction over the subject matter of the action identified in Exhibit D in such Settling State and over each Participating Manufacturer; (2) shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree as to such Settling State; and (3) except as provided in subjections IX(d), XI(c) and XVII(d) and Exhibit O, shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State. Provided, however, that notwithstanding the foregoing, the Escrow Court (as defined in the Escrow Agreement) shall have exclusive jurisdiction, as provided in *Page 38 
section 15 of the Escrow Agreement, over any suit, action or proceeding seeking to interpret or enforce any provision of, or based on any right arising out of, the Escrow Agreement.
 {¶ 69} The Idaho MSA court in Idaho v. Philip Morris, Inc. (Idaho Dist.Ct. June 30, 2006), No. CV OC 97 03239D, at 11, inaccurately stated that:
 The Court believes that the need for uniformity is of paramount concern. The PMs are rightly concerned with a situation in which fifty-two governmental organizations turn to fifty-two different court systems to arrive at fifty-two different interpretations of what should be a uniformly interpreted contract. The risk of inconsistent judgments is simply overwhelming under such facts; especially where, as discussed, the subject of these disputes is a contract that requires uniform application and interpretation. * * *
Such statement of the Idaho MSA court is inaccurate and failed to consider the entirety of the MSA and especially ignores the choice of law provisions in the MSA. MSA § XVIII(n) provides as follows:
 * * * This Agreement (other than the Escrow Agreement) shall be governed by the laws of the relevant Settling State, without regard to the conflict of law rules of such Settling State. The Escrow Agreement shall be governed by the laws of the State in which the Escrow Court is located, without regard to the conflict of law rules of such State.
 {¶ 70} Clearly, Ohio is the relevant state with respect to whether Ohio diligently enforced its Qualifying Statute during the year in question. MSA § VII(b), with respect to enforcement of the Consent Decree provides that:
 * * * Except as expressly provided in the Consent Decree, any Settling State or Released Party may apply to the Court to enforce the terms of the Consent Decree (or for a declaration construing any such term) with respect to alleged violations within such Settling State. A Settling State may not seek to enforce the Consent Decree of another Settling State; provided, however, that nothing contained herein shall effect the ability of any Settling State to (1) coordinate state enforcement actions or proceedings, or (2) file or join any *Page 39 
amicus brief. In the event that the Court determines that any Participating Manufacturer or Settling State has violated the Consent Decree within such Settling State, the party that initiated the proceedings may request any and all relief available within such Settling State pursuant to the Consent Decree.
 {¶ 71} It also must be borne in mind that the word "Court" is a defined term in § II(p) of the MSA as follows: "`Court' means the respective court in Settling State to which this Agreement and the Consent Decree are presented for approval and/or entry as to that Settling State."
 {¶ 72} The MSA also expressly contemplates that the laws of the states do differ and the MSA provides methods for attempting to resolve the matter of interpretations not local in nature. Thus, MSA § VII(f) provides that:
 * * * The Attorneys General of the Settling States (through NAAG) shall monitor potential conflicting interpretations by courts of different States of this Agreement and the Consent Decrees. The Settling States shall use their best efforts, in cooperation with the Participating Manufacturers, to coordinate and resolve the effects of such conflicting interpretations as to matters that are not exclusively local in nature.
This is in addition to the provision in MSA § VII(b) quoted above.
 {¶ 73} The Idaho and New Hampshire MSA courts' finding of a requirement for uniformity of determinations between the MSA courts of the respective states may well stem from their reliance upon the decisions of the MSA courts of Connecticut and New York, the first two courts to consider the issues. Both of those courts found that the MSA requires uniformity of the application of the MSA among the Settling States, without reference to the choice of law provision of the MSA. Many of the MSA courts *Page 40 
considering the issues have blindly followed the lead of the Connecticut and New York courts.
 {¶ 74} The Idaho MSA court determined, at 8, that the diligent enforcement issue is subject to arbitration because "it [the diligent enforcement issue] is inextricably linked with the NPM Adjustment * * *." The majority opinion states that the NPM adjustment is not "applied" to a Settling State that has diligently enforced its Qualifying Statute. Within the meaning of the specific language of the MSA this does not accurately reflect what occurs. The MSA requires the NPM adjustment to be applied (allocated) to every Settling State by the Independent Auditor in both its preliminary calculations and its final calculations. This was done in this case. Then a Settling State can claim an exemption from having its allocated amount of the NPM adjustment deducted from the payment into the escrow account that the PMs are required to make that year on behalf of that Settling State. That Settling State's allocated amount is later reallocated among those Settling States which failed to diligently enforce their respective Qualifying Statutes that year. The exemption determination is a separate, later process (by the MSA court of each Settling State) and is not affected by the Independent Auditor's calculations, determinations, and allocations of the NPM adjustment nor by its determinations.
 {¶ 75} The only relationship between the NPM adjustment and the diligent enforcement issue is that they are both provided for in the MSA. The NPM adjustment has been calculated by the Independent Auditor, and has been allocated both among the PMs and among the Settling States by the Independent Auditor and included in both its preliminary and final calculations. The Independent Auditor made no determination with respect to diligent enforcement as to any of the Settling States, but, instead, made *Page 41 
an assumption as to diligent enforcement as required by the MSA because of insufficient information. The assumption was that all Settling States had diligently enforced their respective Qualifying Statute. There is a dispute as to whether this is the correct assumption or whether, as the PMs contend, the Independent Auditor should have determined to assume that no Settling State had diligently enforced its Qualifying Statute. Resolution by arbitration of which of these assumptions is the correct one for the Independent Auditor to have made under the circumstances has no bearing upon the issue of diligent enforcement by any of the Settling States. Whatever the determination of the arbitration panel as to the dispute over which assumption the Independent Auditor should have made, it will still be necessary for the MSA courts individually to determine with respect to each of the Settling States whether that Settling State had diligently enforced its Qualifying Statute. Of course, if there had been no NPM adjustment calculation and allocations made by the Independent Auditor, there could be no exemption from the NPM adjustment allocation awarded to any of the Settling States. But the NPM adjustment has been calculated, determined, and allocated by the Independent Auditor and no objections or disputes exist with respect to the calculations and determinations nor to the allocations either among the PMs or among the Settling States. The MSA requires a state-specific determination as to each Settling State as to whether that Settling State diligently enforced its Qualifying Statute. It may be argued that the arbitration panel consisting of Article III judges could make that determination which may be possible, but the clear and express language of the MSA is that that determination be made by the MSA court of each Settling State governed by the law of that state. The MSA could have been written differently, but the *Page 42 
PMs and the Settling States agreed to the language contained in the MSA and no court should attempt to re-write the MSA to comply with that court's opinion of what would be a better method of settling disputes.
 {¶ 76} The Idaho MSA court in justifying its decision misquoted MSA § VII(a) stating, at page 5-6 of the decision: "The MSA enforcement provision provides that State courts have `exclusive jurisdiction for the purposes of implementing and enforcing [the MSA] as to such Settling State * * * and * * * except as provided in subsections IX(d), XI(c) and XVII(d) and Exhibit O, shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State.'" (Emphasis omitted.) As misquoted, the provision can be argued to supplant the exclusive jurisdiction of the MSA court of a Settling State. As actually written, however, this is not a possible interpretation. MSA § VII(a) contained three separate parts, with separate numbers 1, 2, and 3, and each is independent of the other. The very language of subsection 3 indicates no intention to supplant the jurisdiction of the MSA court over disputes involving interpretation or enforcement of the MSA or the Consent Decree. The language of subsection 3 indicates to the contrary stating that with the exceptions the MSA court of the Settling State "shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State." Such provision is not a limitation upon jurisdiction, although it may arguably be a limitation on exclusiveness of that jurisdiction. In any event, it cannot be reasonably interpreted to preclude the jurisdiction of the MSA court to hear disputes concerning the MSA merely because one matter may be referred to an arbitration panel pursuant to the limited arbitration clause of the MSA. The arbitration panel is not a court and cannot be *Page 43 
construed in any manner to be a court. As indicated above, the reason for inclusion of the limited arbitration clause as an exception to a Settling State's MSA court exclusive jurisdiction may be the reference in that clause to the Federal Arbitration Act, which may permit a federal court at some stage to be involved. Although the exclusiveness of a Settling State's MSA court may be limited by the provision, the MSA court's conferred jurisdiction is not. So long as no other court has obtained jurisdiction over a dispute, the MSA court's jurisdiction to hear and determine disputes under the MSA is available to both the PMs and the affected Settling State pursuant to MSA § VII(c). The concurrent jurisdiction rule may be invoked and the court first obtaining jurisdiction may acquire exclusive jurisdiction to the exclusion of other courts, which might have jurisdiction over the particular dispute.
 {¶ 77} This action was commenced by the state of Ohio in the Ohio MSA court seeking a determination as to whether or not Ohio diligently enforced its Qualifying Statute during the calendar year immediately preceding the year in which the PMs were required to make their payment into the escrow fund. As their defense, the PMs responded with a motion to compel arbitration of the certified dispute as to whether the Independent Auditor properly assumed that all states had diligently enforced their respective statute during that year or whether the Independent Auditor should have assumed that no state had diligently enforced its Qualifying Statute during that year. The arbitration panel has not yet been selected and, accordingly, has not assumed jurisdiction over that dispute. Nor has relief been sought in any other court by either the PMs or the state of Ohio with respect to the issue of whether Ohio diligently enforced its Qualifying Statute during the year in question. Under the circumstances that exist, the *Page 44 
Ohio MSA court was the only court to which the state of Ohio could have brought this action to enforce the MSA and for a declaratory determination as to whether Ohio diligently enforced its Qualifying Statute during the year in question. Not only is there no provision in the limited arbitration clause, which would preclude the Ohio MSA court from determining whether Ohio diligently enforced its Qualifying Statute during the year in question, but the Ohio MSA court was the only court in which the action to seek that determination could have been filed at the time this action was commenced by Ohio.
 {¶ 78} The Idaho MSA court, in its decision at 7, also misstated the language of § XI(c) as to the nature or scope of the arbitration clause by adopting some language from the New York MSA court decision that "`the clear intent of the parties as embodied in § XI(c) that anymatter arising out of, or relating to, the subject matter of the Independent Auditor's calculations and determinations is a propersubject of arbitration.'" (Emphasis added.) The italicized words are words that do not appear in MSA § XI(c). Instead of the word "matter," the MSA clause contains the words "dispute, controversy or claim." The words "subject matter" are not contained in the MSA. Instead, the words of § XI(c) as quoted above are "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor * * *." The difference in meaning is obvious. Based upon this misunderstanding, the Idaho court went on to state "the MSA arbitration clause, while not so broad as to encompass the entire agreement, is quite broad within its determined confines * * *." The Idaho court did then state a "[c]areful reading of this section reveals that mandatory arbitration under the MSA can only be invoked in the context of disputes regarding calculations or determinations by the Independent Auditor related to findings *Page 45 
under Sections IX(j) or XI(i)." (Emphasis sic.) While this statement is not inaccurate, it was not utilized by the Idaho court as a basis for its determination that the issue of diligent enforcement is included in the arbitration clause. First, the Independent Auditor made no finding or calculation with respect to the issue of diligent enforcement and, instead, expressly refused to do so, stating, in its 2006 preliminary calculation, "[t]he Independent Auditor is not charged with the responsibility under the MSA of making a determination regarding this issue [whether a specific state had diligently enforced the statute]. More importantly, the Independent Auditor is not qualified to make the legal determination as to whether any particular Settling State has `diligently enforced' its Qualifying Statute." Furthermore, MSA § IX(j) and XI(i) do not relate to nor even mention diligent enforcement by a Settling State of its Qualifying Statute. MSA § IX(j) sets forth the 13-step process that the Independent Auditor must utilize in making its calculation to be set forth in both the preliminary and final calculations. MSA § XI(i) deals with miscalculated or disputed payments and provides that the Independent Auditor must make a recalculation if new information becomes available indicating a calculation in the final calculations is inaccurate or that information previously unavailable becomes available necessitating a recalculation, especially with respect to something that the Independent Auditor has assumed because of missing information. However, neither section mentions much less makes any provision or requirement with respect to the issue of diligent enforcement by a Settling State. While § XI(c) does mention "any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations * * *," the ending clause "described in subsection IX(j) or subsection XI(i) * * *," means that only such adjustments, reductions, offsets, *Page 46 
carry-forwards, and allocations as are described in those two subsections "shall be submitted to binding arbitration before a panel of three neutral arbitrators * * *." MSA § XI(c). Thus, since diligent enforcement by a Settling State is not mentioned in either § IX(j) nor XI(i), the issue of diligent enforcement is not subject to arbitration. In other words, the issue of whether a specific Settling State has diligently enforced its Qualifying Statute is precluded from being arbitrated because neither diligent enforcement nor exemption from the NPM adjustment is included among the matters the Independent Auditor must calculate or determine, nor are they included within the language specifying what matters are to be arbitrated.
 {¶ 79} Although Ohio public policy may favor arbitration as a means to settle disputes, that policy does not apply where the arbitration clause does not cover the dispute in question. Gibbons-Grable Co. v. GilbaneBldg. Co. (1986), 34 Ohio App.3d 170, 173. A party cannot be compelled to arbitrate a dispute which he has not agreed to submit to arbitration.Henderson v. Lawyers Title Ins. Corp., 108 Ohio St.3d 265,2006-Ohio-906. If a party has not signed an arbitration agreement agreeing to arbitrate a particular dispute, an assumption arises against arbitration of that dispute. Council of Smaller Ent. v. Gates, McDonald Co., 80 Ohio St.3d 661, 667, 1998-Ohio-172. The Supreme Court of Ohio, in Academy of Medicine of Cincinnati v. Aetna Health, Inc.,108 Ohio St.3d 185, 2006-Ohio-657, held that a party cannot be required to submit to arbitration any dispute if he has not agreed to submit that dispute. Also, in making the determination of whether a dispute falls within an arbitration clause, the court must classify the particular clause as either broad or narrow and, if narrow, it is to be strictly construed as to the matters which are included within the arbitration requirement. See *Page 47 Louis Dreyfus Negoce S.A. v. Blystad Shipping Trading Inc. (C.A.2, 2001), 252 F.3d 218, 224.
 {¶ 80} The majority opinion finds the arbitration clause to be limited and narrow, but then proceeds to give it a broad interpretation because the language of the arbitration clause includes the broad term "or any" as well as the words "relating to" and the words "arising from." However, with respect to determining the scope of the arbitration clause, that is, what is covered by the arbitration clause, the narrow construction must be given. Otherwise, the broad-narrow distinction is rendered meaningless. The MSA arbitration clause is limited because everything in the MSA is excluded from the arbitration clause except those dispute controversies or claims arising out of or relating to calculations performed by or determinations made by the Independent Auditor. The dispute as to whether the Independent Auditor's assumption that all states had diligently enforced their respective Qualifying Statute is included within that language. However, the issue of whether a specific Settling State is entitled to an exemption because it diligently enforced its Qualifying Statute during the year in question is not included within the arbitration clause when that clause is given a narrow construction. Rather, as stated above, other language in the arbitration clause, as well as other language in the MSA, clearly indicates the issue as to whether a specific Settling State diligently enforced its Qualifying Statute be determined by the MSA court of that Settling State. The Idaho MSA court, quoted the decision of the New Hampshire MSA court, and adopted the New Hampshire court language, which stated, at 7:
 * * * Moreover, under § IX(d)(2)(C), if the NPM Adjustment is determined not to apply to a given state because it diligently enforced its Qualifying Statute, the amount by which its allocated share would have been reduced is reallocated, pro *Page 48 rata, to other Settling States, to which the NPM adjustment does apply. Thus, if this Court were to determine that New Hampshire had diligently enforced its Qualifying Statute, the allocated shares of all other Settling States would, necessarily, be decreased. Out of fear of having their allocated shares cut, each of the remaining Settling States would then race to their respective courthouses for a declaration that they had diligently enforced their Qualifying Statutes so that the NPM Adjustment would not apply to them and they would not suffer a loss to their allocated share. Such a result is plainly contrary to the parties' intent to have issues of nationwide concern, such as the application of nationwide adjustments and reductions, determined on a nationwide basis. * * *
 {¶ 81} There are, of course, two fatal inaccuracies in the New Hampshire statement adopted by the Idaho court. MSA § IX(d)(2)(C) provides as follows:
 The aggregate amount of the NPM Adjustments that would have applied to the Allocated Payments of those Settling States that are not subject to an NPM Adjustment pursuant to subsection (2)(B) shall be reallocated among all other Settling States pro rata in proportion to their respective Allocable Shares (the applicable Allocable Shares being those listed in Exhibit A), and such other Settling States' Allocated Payments shall be further reduced accordingly.
However, subsection (2)(D) limits the increase that may be made in the allocation of the NPM adjustment to any given Settling State. Moreover, the MSA expressly provides for an exemption from the NPM adjustment, which is to be awarded to any state that has diligently enforced its Qualifying Statute and (2)(D) sets forth the penalty imposed by the MSA upon those Settling States which do not diligently enforce their Qualifying Statute. The result, feared by the New Hampshire and Idaho MSA courts, is precisely the result intended by the MSA. While it is possible that all the PMs will lose the benefit of the NPM adjustment, that is precisely the result provided for and contemplated by the MSA, which places greater emphasis upon diligent enforcement of the Settling States' *Page 49 
Qualifying Statutes than it does upon the PMs receiving the benefit of the NPM adjustment. The PMs may not like this result, but it is what they agreed to in the MSA. This result is consistent with the overall purpose of the MSA which requires a Qualifying Statute to impose upon the NPMs restrictions similar to those imposed upon the PMs by the MSA and to impose a per pack cigarette tax in lieu of the collective annual payment to the escrow account for the benefit of the Settling States that the MSA requires the PMs to make.
 {¶ 82} The second misstatement in the New Hampshire MSA decision adopted by the Idaho MSA court, is that there is an "intent to have issues of nationwide concern * * * determined on a nationwide basis." This is a matter that has been expressed in many MSA court decisions, starting with the Connecticut and New York MSA court decisions, which have been blindly followed by many MSA courts. However, there is no such provision in the MSA. Considering all of the provisions of the MSA, including the choice of law provisions, the only conclusion that can be reached is that the intent of the MSA is to have disputes settled on an individual Settling State basis utilizing the law of that Settling State as the governing law to be applied in making the determination. Furthermore, the issue before the Connecticut and New York courts was whether the Independent Auditor's assumption that all states had diligently enforced their respective Qualifying Statute is subject to arbitration, the action in each state having been brought by the PMs to compel arbitration of that issue. The diligent enforcement issue was raised by the Settling State in each of those cases as a defense to arbitration of the Independent Auditor's assumption by a contention that the diligent enforcement exemption to the NPM adjustment precluded arbitration of the Independent Auditor's *Page 50 
assumption, which contention those courts rejected. Here, however, Ohio commenced this action seeking a declaration that Ohio diligently enforced its Qualifying Statute during the year in question and the PMs filed the motion to compel arbitration as a defense to the state's motion, and expressly sought to arbitrate not the issue of diligent enforcement, but, instead, the dispute as to whether the Independent Auditor properly assumed that all states had diligently enforced their respective Qualifying Statute.
 {¶ 83} From the foregoing, it is apparent that a Settling State's exemption from the NPM adjustment is totally unrelated to the making or allocating of the NPM adjustment in the Independent Auditor's preliminary or final calculation, which sets forth the Independent Auditor's calculations of the NPM adjustment and the allocations thereof to both the Settling States and the PMs.[8] Therefore, the final calculation is as complete as it can be and will be amended pursuant to the MSA when the necessary information is supplied to the Independent Auditor. As the Independent Auditor stated, it is not charged with making the exemption determination as to any state. The MSA unequivocally places the duty, responsibility, and authority to make the exemption determination as to a Settling State upon the MSA court of that state — the Ohio MSA court in this case. The Ohio MSA court erred in failing to accept this responsibility and instead referring the exemption (diligent enforcement) issue to arbitration. I would find the second assignment of error well-taken and sustain it. This court should remand this case to the Ohio MSA court with instructions to forthwith consider and determine the *Page 51 
issue of whether Ohio diligently enforced its Qualifying Statute during the year in question.
[7] In other words, the amount each PM is required to pay into the escrow account is reduced by the amount of the NPM adjustment allocated to it and the amount each Settling State is entitled to have credited to its separate account in the escrow account is reduced by the amount of the NPM adjustment allocated to it.
[8] Unless the exemption determination has been made prior to the Independent Auditor's final calculation in which event the Independent Auditor should apply the effect of the exemption in its final calculation, which it did not do in this case because it did not have the necessary information and made an interim assumption instead. *Page 1