[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 661.]

COUNCIL OF SMALLER ENTERPRISES, APPELLANT, *v.* GATES, MCDONALD & COMPANY, APPELLEE.

[Cite as *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 1998-Ohio-172.]

*Contracts—Arbitration—Ninety-day demand for arbitration provision—Presumption in favor of arbitration—Timeliness of demand for arbitration is itself arbitrable, when.*

(No. 96-1302—Submitted October 8, 1997—Decided January 14, 1998.)

APPEAL from the Court of Appeals for Cuyahoga County, Nos. 68510 and 69868.

————————————

{¶ 1} Appellant, Council of Smaller Enterprises ("COSE"), sponsors a Workers' Compensation Group Experience Rating Program as a service to its member businesses in the Cleveland area.  On January 1, 1992, COSE and appellee, Gates, McDonald & Company ("Gates McDonald"), entered into a "Service Agreement" under which Gates McDonald was to administer and run the program.  Article 2 of the agreement detailed the services to be provided by Gates McDonald.  Article 4 of the agreement, titled "Financial Matters," detailed how Gates McDonald was to be compensated for fulfilling its obligations under the agreement.

{¶ 2} Article 6 of the agreement provided that the initial term of the agreement was to end on June 30, 1993.  Subsequent terms of the agreement ("Renewal Terms") were to run for twelve-month periods from July 1 to June 30 of the following year, with each such period defined as a "Rating Year."  The agreement was subject to automatic renewal for the next rating year unless either party gave notice of nonrenewal by October 1 of the current rating year.

**{¶ 3}** COSE gave notice of nonrenewal to Gates McDonald on September 21, 1993. In January 1994, COSE advised Gates McDonald that another company had been selected to replace Gates McDonald as program administrator.

**{¶ 4}** In February 1994, executives of COSE and Gates McDonald exchanged a series of letters. In a letter dated February 8, 1994, the Gates McDonald president, David K. Hollingsworth, claimed that COSE owed Gates McDonald several fees for various types of services performed by Gates McDonald. The COSE executive director, John J. Polk, responded in a letter dated February 14, 1994, setting out COSE's position that some of the claimed fees had already been paid, and even if those fees had not been paid, that COSE was not the responsible party for those fees under the terms of the Service Agreement. Polk also agreed that some other fees were due, but expressed disagreement over the amount of those other fees.

**{¶ 5}** On February 18, 1994, Hollingsworth reasserted the claims for fees in another letter to COSE. Polk responded on February 24, 1994, reiterating the points made in the letter of February 14. The February 24 correspondence concluded with the following paragraph:

"COSE takes this matter very seriously and expects full compliance with the Agreement. In order to resolve our differences concerning the obligations of Gates McDonald under the Agreement, including the delivery of files and records relating to the formation of the 1994 Groups and the claim of Gates McDonald for additional fees, I believe it is necessary for representatives of Gates McDonald and COSE to sit down together and discuss these issues. In this way, we should be able to avoid the impasse that we are quickly approaching. Therefore, please call me at your earliest convenience so that we can schedule such a meeting."

**{¶ 6}** A meeting between representatives of COSE and Gates McDonald was held on April 6, 1994. At this meeting, Gates McDonald's claims to the fees were discussed. The issues were not resolved.

**{¶ 7}** On July 5, 1994, counsel for Gates McDonald sent a letter to COSE demanding that the claims be submitted to arbitration pursuant to Section 7.7 of the Service Agreement. Section 7.7 provides:

"**<u>Arbitration</u>**.

"(a) All disputes and controversies of every kind and nature between Gates and COSE that may arise as to the existence, construction, validity, interpretation or meaning, performance, non-performance, enforcement, operation, breach, continuance, or termination of this Agreement shall be submitted to arbitration pursuant to the following:

"(i) Either party may demand such arbitration in writing within ninety (90) days after the controversy arises * * *.

"* * *

"(b) The parties stipulate that the provisions hereof shall be a complete defense to any suit, action, or proceeding instituted in any federal, state, or local court or before any administrative tribunal with respect to any controversy or dispute arising during the period of this agreement and which is arbitratable [*sic*] as herein set forth. The arbitration provisions hereof shall, with respect to such controversy or dispute, survive the termination or expiration of this Agreement."

**{¶ 8}** COSE, rather than acceding to the arbitration demand, on August 2, 1994 filed a complaint for a declaratory judgment in the Cuyahoga County Court of Common Pleas, urging that Gates McDonald had failed to demand arbitration within ninety days after the controversy arose, as required by Section 7.7(a)(i) of the Service Agreement. COSE sought a declaration that Gates McDonald had waived its claims to fees by its alleged failure to comply with the ninety-day provision, and that Gates McDonald was thereby barred from arbitrating the claims, and further was precluded from adjudicating the claims in court.

**{¶ 9}** In its answer, Gates McDonald denied, *inter alia*, COSE's allegations that it had failed to make a timely demand for arbitration, and denied that it had waived its claim to fees. Gates McDonald also counterclaimed for the fees.

**{¶ 10}** COSE moved for judgment on the pleadings. COSE argued that it was for the court, not the arbitrator, to determine whether Gates McDonald had failed to comply with the ninety-day time limit, and further argued that the claims had been waived. COSE also argued that Gates McDonald, through a paragraph in the answer, had made a judicial admission that the demand for arbitration was untimely. COSE pointed out that Gates McDonald had stated in its answer that a "dispute existed" in February 1994, and that this statement was the equivalent of acknowledging that the "controversy arose" at that time for purposes of Section 7.7 of the Service Agreement. COSE argued that this acknowledgment should be read as an admission of untimeliness, since February 1994 was more than ninety days before the demand for arbitration was made.

**{¶ 11}** On January 5, 1995, the trial court granted COSE's motion, without issuing an opinion. The substantive portion of the trial court's entry read in its entirety, "Plaintiff's Motion to Dismiss Defendant's Counterclaim and Plaintiff's Motion for Judgment is granted. Final."

**{¶ 12}** Gates McDonald appealed the trial court's judgment to the Court of Appeals for Cuyahoga County. The court of appeals, in a split decision, reversed the judgment of the trial court, holding that the trial court erred in entering judgment for COSE, and further holding that the trial court should have declared that the parties were required to submit to arbitration.

**{¶ 13}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

————————————

*Squire, Sanders & Dempsey, L.L.P., Daniel J. O'Loughlin, John E. Lynch, Jr.,* and *Harold E. Farling*, for appellant.

*Bricker & Eckler, Anne Marie Sferra, Harry Wright IV* and *Michael D. Smith*, for appellee.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 14} The issue for resolution is whether, in the circumstances presented here, a court or an arbitrator determines the construction and consequences of the ninety-day demand provision in the parties' Service Agreement. For the reasons that follow, we find that a presumption in favor of the arbitrability of the parties' dispute over the interpretation of Section 7.7(a)(i) of the agreement applies in the circumstances of this case, and that COSE, the party resisting arbitration, has failed to overcome the presumption. We affirm the judgment of the court of appeals.

{¶ 15} The parties do not disagree that the underlying issues regarding fees are matters clearly within the scope of the agreement to arbitrate. The parties' disagreement centers on the interpretation to be given to the section of the agreement setting forth the ninety-day provision. COSE asserts that the ninety-day arbitration demand provision is a "condition precedent" that qualifies the agreement to arbitrate, and that indicates the parties' intent to have a court, not an arbitrator, construe Section 7.7(a)(i) of the agreement. Adoption of COSE's position would lead to the conclusion that the trial court therefore properly undertook to construe Section 7.7(a)(i), and properly determined that Gates McDonald's claim for the fees was untimely, so that arbitration is unwarranted.

{¶ 16} Gates McDonald, on the other hand, asserts that the parties intended to have an arbitrator construe the meaning of Section 7.7(a)(i), and that, even if that section would operate as a "condition precedent" to the arbitration of the fee disputes, it is up to the arbitrator to make that determination. Adoption of Gates McDonald's position would lead to the conclusion that the parties must submit the "dispute" or "controversy" over the ninety-day demand provision to arbitration,

with the arbitrator ruling on the implications of the ninety-day demand provision as a threshold matter requisite to any consideration of the fee disputes on the merits.

{¶ 17} Initially, our consideration of this case recognizes that the arbitration clause agreed to by the parties in Section 7.7(a) of the Service Agreement is extremely broad. That clause begins with the language that "[a]ll disputes and controversies of every kind" shall be submitted to arbitration. The unqualified breadth of this language supports Gates McDonald's preferred construction of the parties' intent regarding the overall arbitration provision. At the same time, the employment by the parties of this opening broad language lessens the strength of COSE's position regarding the parties' intent to have the subsequent ninety-day demand provision specifically qualify the earlier language of the clause.

{¶ 18} Our consideration is further influenced by the decision of the United States Supreme Court in *John Wiley & Sons, Inc. v. Livingston* (1964), 376 U.S. 543, 556-557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898, 908-909, in which the court stated:

"Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it.

"* * *

"Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.

"* * *

"Once it is determined * * * that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition would be left to the arbitrator."

{¶ 19} Although our decision is affected by the above concerns, the telling question in this case concerns what the parties agreed to empower an arbitrator to decide, as revealed by an examination of the parties' agreement. The answer to this question will resolve whether the disagreement over the ninety-day demand provision is a "procedural question" growing out of the dispute and bearing on its final disposition, so that it should be referred to the arbitrator in the sense discussed in *John Wiley & Sons*.

{¶ 20} In *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648, the United States Supreme Court summarized four general principles, developed in prior decisions of that court, to be applied when considering the reach of an arbitration clause. The essence of these general principles, set out primarily in the "*Steelworkers* Trilogy" (*Steelworkers v. Am. Mfg. Co.* [1960], 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *Steelworkers v. Warrior & Gulf Navigation Co.* [1960], 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *Steelworkers v. Enterprise Wheel & Car Corp.* [1960], 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424) is pertinent to our review, and provides a framework for our inquiry.[1]

{¶ 21} The first principle is that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *AT&T Technologies*, 475 U.S. at 648-649, 106

---

1. The *Steelworkers* Trilogy of cases, *John Wiley & Sons,* and *AT&T Technologies* all involved interpretation of arbitration clauses in collective bargaining agreements. Although the case *sub judice* does not arise in the collective bargaining context, it is now clear that the general principles discussed reach beyond labor arbitration cases. See *PaineWebber Inc. v. Elahi* (C.A.1, 1996), 87 F.3d 589, 594, fn. 6 (recognizing that labor arbitration precedents can apply in a nonlabor arbitration setting).

S.Ct. at 1418, 89 L.Ed.2d at 655, quoting *Warrior v. Gulf*, *supra*, 363 U.S. at 582, 80 S.Ct. at 1353, 4 L.Ed.2d 1417.

{¶ 22} The second principle is that "the question of arbitrability—whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.,* 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.

{¶ 23} The third rule is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id*., 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

{¶ 24} The fourth principle is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id*., 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656, quoting *Warrior v. Gulf*, *supra*, 363 U.S. at 582-583, 80 S.Ct. at 1353, 4 L.Ed.2d 1417.

{¶ 25} Appellant COSE argues that the ninety-day arbitration demand provision contained in Section 7.7 of the Service Agreement should be read as imposing a "condition precedent" on the duty to arbitrate, and that the terms of the agreement reveal an intent by the parties not to confer jurisdiction upon an arbitrator to decide a controversy if that condition precedent is not met. Accordingly, COSE asserts that the issue here is a question of "arbitrability" and that the trial court ruled correctly when it found that COSE did not have to arbitrate anything. As a consequence of this argument, COSE's position must necessarily be that the parties agreed to have the court, rather than the arbitrator, determine the contours of the

parties' compliance with Section 7.7(a)(i) of the agreement. In support of its position, COSE cites the recent United States Supreme Court decision in *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985, and suggests that its position is "vindicated" by the Supreme Court's consideration in that case regarding whether a trial court or an arbitrator should decide the "arbitrability" of a particular dispute.

{¶ 26} When *First Options* is considered in its context, it does not support COSE's position. The key factor in *First Options* that distinguishes it from this case is that in *First Options*, the parties resisting arbitration had not personally signed the document containing the arbitration clause. See 514 U.S. at 941, 115 S.Ct. at 1922, 131 L.Ed.2d at 991. The Supreme Court contrasted the situation before it with a situation in which the parties to a valid arbitration clause have a contract providing for arbitration of some issues, and a party resists arbitration of an issue on the assertion that the contract does not require arbitration of that particular issue. *Id.*, 514 U.S. at 944-945, 115 S.Ct. at 1924-1925, 131 L.Ed.2d at 994. The presumption *in favor of* arbitrability applies in the latter situation, which is also present in the case *sub judice*.

{¶ 27} In the *First Options* situation, on the other hand, the presumption is *against* arbitrability because there is serious doubt that the party resisting arbitration has empowered the arbitrator to decide anything, including the arbitrator's own scope of authority. *Id.*, 514 U.S. at 945, 115 S.Ct. at 1924-1925, 131 L.Ed.2d at 994. The court in that instance is simply considering an aspect of the most fundamental question of all arbitration cases—the first principle of *AT&T Technologies*—that no party can be required to submit to arbitration when that party has not agreed to do so. The *First Options* conclusion regarding when a presumption against arbitrability applies is inapplicable to this case. COSE does not claim that the arbitration clause is invalid, and so accepts that the underlying fee dispute is arbitrable, but rather claims that the ninety-day "condition precedent"

to arbitration was not complied with and thus arbitration is unavailable. The *First Options* opinion actually reinforces the fourth principle of *AT&T Technologies*. The presumption in favor of arbitrability applies in this case, so that the trial court should have ordered that the disagreement over the ninety-day demand provision be submitted to arbitration unless it could be determined with "positive assurance" that the dispute was not susceptible of arbitration.

{¶ 28} Having determined that the presumption in favor of arbitrability applies here, we next consider whether COSE, the party opposing arbitration, has overcome the presumption. In *AT&T Technologies*, the Supreme Court declined to consider this question. After setting out the principles discussed above, and thereby detailing the correct approach, the Supreme Court remanded the cause to the district court for it to apply the analysis to the precise situation of that case. 475 U.S. at 651-652, 106 S.Ct. at 1420, 89 L.Ed.2d at 657-658. Based on the record before us, and because the answer is readily apparent from that record, we proceed to consider this question.

{¶ 29} In the case *sub judice*, the narrow question to be determined is whether the parties intended to have the court or the arbitrator determine the construction of the ninety-day demand provision. Our inquiry is significantly affected by the broad scope of the arbitration clause here — the parties have agreed to arbitrate "[a]ll disputes and controversies of every kind and nature * * * that may arise as to the existence, construction, validity, interpretation or meaning, performance, non-performance, enforcement, operation, breach * * *" of the agreement.

{¶ 30} In applying the standard set forth in *AT&T Technologies* that the party resisting arbitration must meet in order to overcome the presumption in favor of arbitrability, we ask "whether, because of express exclusion or other forceful evidence, the dispute over the interpretation of [the ninety-day demand provision] is not subject to the arbitration clause." *Id.*, 475 U.S. at 652, 106 S.Ct. at 1420, 89

L.Ed.2d at 657-658. Our inquiry is " 'strictly confined' * * * to whether the parties agreed to submit disputes over the meaning of [the ninety-day demand provision] to arbitration. Because the * * * agreement contains a standard arbitration clause, the answer must be affirmative unless the contract contains explicit language stating that disputes respecting [the ninety-day demand provision] are not subject to arbitration, or unless the party opposing arbitration * * * adduces 'the most forceful evidence' to this effect from the bargaining history." *Id.*, 475 U.S. at 654-655, 106 S.Ct. at 1421, 89 L.Ed.2d at 659-660 (Brennan, J., concurring).

**{¶ 31}** We apply general contract law, influenced by the presumption of arbitrability detailed above, to answer the question. "[T]he basic objective * * * is * * * to ensure that commercial arbitration agreements, like other contracts, ' "are enforced according to their terms," ' * * * and according to the intentions of the parties." *First Options*, 514 U.S. at 947, 115 S.Ct. at 1925, 131 L.Ed.2d at 995.

**{¶ 32}** COSE can cite no "explicit language" providing that disputes respecting Section 7.7(a)(i) are not subject to arbitration. COSE can point only to the language of the ninety-day demand provision, and claim that the language itself evidences an intent not to submit this dispute to arbitration. However, the major weakness in COSE's argument is that someone, either the court or the arbitrator, must determine when a "controversy arose" in order to effectuate the intent of the parties as to that section. The language employed in Section 7.7(a)(i) is not so clear on what demands are untimely so as to be self-executing. Moreover, Gates McDonald does not agree, and has never agreed, that its demands are untimely.

**{¶ 33}** In this case, the language of Section 7.7(a)(i) is itself in need of interpretation before it can be implemented, and that interpretation is in dispute. COSE's argument that a timely demand is a condition precedent to arbitration does not help it on this key point—that a legitimate dispute exists over whether the demand was timely. As the parties have empowered the arbitrator to hear "all disputes and controversies of every kind and nature," what the parties intended if

the factual situation of this case arose must be determined by the arbitrator. In addition, COSE presented no evidence at all of negotiating history with respect to this decisive question. Although the ninety-day demand provision may indeed be a "condition precedent" to arbitration of the fee disputes, COSE has not demonstrated an intent to exclude the dispute surrounding Section 7.7(a)(i) from the reach of the arbitration clause, and so has not overcome the presumption in favor of arbitrability.

{¶ 34} When all the considerations above are taken into account, this case is another example of the application of the general observation made in *John Wiley & Sons*, 376 U.S. at 557, 84 S.Ct. at 918, 11 L.Ed.2d at 909, that matters regarding procedural questions growing out of the parties' dispute and bearing on its final disposition are best left to the determination of the arbitrator.

{¶ 35} Our decision here is in accord with that of most courts of appeals in this state that have considered this issue. In *Independence Bank v. Erin Mechanical* (1988), 49 Ohio App.3d 17, 18, 550 N.E.2d 198, 200, the court stated, "[A] clause in a contract providing for dispute resolution by arbitration should not be denied effect ' "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. * * *" ' *Gibbons-Grable v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 173, 517 N.E.2d 559, 562 (quoting from *Siam Feather & Forest Products Co. v. Midwest Feather Co.* [S.D.Ohio 1980], 503 F.Supp. 239, 241, affirmed [C.A.6, 1981], 663 F.2d 1073). Any doubts should be resolved in favor of coverage under the contract's arbitration clause. *Id.*" See, also, *e.g.*, *Bd. of Library Trustees, Shaker Hts. Pub. Library v. Ozanne Constr. Co., Inc.* (1995), 100 Ohio App.3d 26, 651 N.E.2d 1356; *Didado v. Lamson & Sessions Co.* (1992), 81 Ohio App.3d 302, 610 N.E.2d 1085.

{¶ 36} In its second proposition of law, COSE argues that Gates McDonald made a statement in its answer that should be taken as a judicial admission that Gates McDonald's arbitration demand was untimely. Gates McDonald contends

that it has never admitted the untimeliness of its arbitration demand. In line with our discussion above, this point of disagreement is for the arbitrator to decide; it is not for the courts. Consequently, because any discussion of this issue would take us beyond the scope of our consideration, we do not address it. Furthermore, our decision here should not be read as any comment on the construction to be given to Section 7.7(a)(i). The parties' arguments regarding the interpretation to be given to that provision should be addressed to the arbitrator.

{¶ 37} For all the foregoing reasons, the judgment of the court of appeals is affirmed. This cause is remanded to the trial court for a declaration that the parties must submit to arbitration.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment only.

DOUGLAS and F.E. SWEENEY, JJ., dissent.

————————————

**DOUGLAS, J., dissenting.**

{¶ 38} I respectfully dissent. I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

————————————