[Cite as *Entire Energy & Renewables, L.L.C. v. Duncan*, 2013-Ohio-4209.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Entire Energy & Renewables, LLC et al., | : | |
| Plaintiffs-Appellees, | : | |
| v. | : | No. 12AP-1056 |
| | | (C.P.C. No. 12CVH05-6603) |
| Matthew Duncan et al., | : | |
| | | (ACCELERATED CALENDAR) |
| Defendants-Appellees, | : | |
| (EnviroWave Energy, LLC et al., | : | |
| Defendants-Appellants). | : | |

D E C I S I O N

Rendered on September 26, 2013

*Law Offices of Daniel R. Mordarski LLC*, and *Daniel R. Mordarski*, for appellees Entire Energy & Renewables, LLC.

*Lane, Alton & Horst LLC,* and *Edward G. Hubbard*, for appellees FWD: Power, LLC.

*Ice Miller LLP, Josef Keglewitsch* and *Stephen Kleinman*, for appellees The Chestershire Group, LLC and The Gary L. Curry Revocable Living Trust.

*Hahn Loeser & Parks LLP, John F. Marsh* and *F. Allen Boseman, Jr.*, for appellants EnviroWave Energy, LLC, John Novak and Judith Novak.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} This is an appeal from a decision and entry denying defendants-appellants', EnviroWave Energy, LLC, John Novak and Judy Novak (collectively, "EnviroWave"),

motion to compel arbitration and to dismiss or stay litigation.  For the reasons that follow, we affirm.

*Facts*

{¶ 2}   The following facts are from the allegations in the amended complaint.

{¶ 3}   Appellant John Novak and his company, EnviroWave, invented, developed and patented a technology to use microwave energy to process shredded tires into renewable energy, fuel, and industrial process commodities. The only existing EnviroWave Tire System was located in Ashtabula, Ohio.  Sometime during 2010, the project ran out of money and was idled.  The tire system continued to be stored at the Ashtabula location until May 9, 2012.

{¶ 4}   In March 2011, Richard Sloan, the CEO of appellee FWD:Power, LLC ("FWD:Power") executed an agreement with EnviroWave to purchase and license tire systems from EnviroWave. That agreement contained an arbitration clause and was for territories other than Franklin County, Ohio.

{¶ 5}   In addition to his out-of-state dealings with John Novak and EnviroWave, Sloan and FWD:Power wanted to relocate the existing tire system from Ashtabula, Ohio to Grove City, Ohio, where a large scrap tire facility was located. Sloan was also communicating with the purchasers of the existing EnviroWave Tire System, appellants known as the "Duncan Defendants" and/or appellant Enterprise 620, LLC ("E620").  In 2011, Sloan was introduced to Gary Curry.  Curry is the owner of the Chestershire Group ("TCG"), the trustee for appellee, the Gary L. Curry Revocable Living Trust ("Curry Trust"), and the manager of non-party, Franklic LLC ("Franklic").

{¶ 6} After months of due diligence, and based upon EnviroWave's representations and silence, FWD:Power, TCG, E620, and the Duncan Defendants formed and funded the joint venture Entire Energy & Renewables, LLC ("EER").  EER was formed on September 9, 2011 to secure funding for the move and to obtain a sublicense for the technology.  E620 contributed equipment known as the "Ashtabula Assets," and those assets were supposedly free and clear of all security interests or other encumbrances.  The Curry Trust provided additional debt financing to the company to position EER to construct, own, and operate a tire system plant in Franklin County, Ohio by relocating and utilizing the Ashtabula Assets.

{¶ 7}   In December 2011, Curry negotiated and executed on behalf of Franklic, a written agreement with EnviroWave ("the Franklic Agreement") that granted a limited license for EnviroWave's technology for the tire systems.   Franklic was required to purchase and build, or relocate at least one tire system in Franklin County, Ohio.   Under Article 2.4 of the Franklic Agreement, Franklic could, at its discretion, sublicense its rights for the processing of scrap tire shards to EER, and to EER alone in Franklin County.  The Franklic Agreement included an arbitration clause.

{¶ 8}   From January through early March 2012, EER continued forward with the project believing that it had a clear title to the Ashtabula Assets.

{¶ 9}   On March 22, 2012, EnviroWave claimed that the Duncan Defendants owed in excess of $2 million for the tire system and that EnviroWave had a security interest in the tire system, albeit one that had not been perfected by a filing. EnviroWave intentionally did not disclose the claimed debt owed by the Duncan Defendants because it was confidential to EnviroWave and the Duncan Defendants.

{¶ 10} At one point, Duncan admitted to falsifying wire transfers and to owing EnviroWave some undetermined amount of money for the tire system.  He also claimed he was entitled to various credits because EnviroWave owed him money.

{¶ 11} EnviroWave forbade moving the Ashtabula Assets to Franklin County. Ultimately, the project was so delayed that the plant was unable to be constructed.

### Procedural Posture

{¶ 12} Plaintiffs EER, FWD:Power, TCG, and the Curry Trust brought this action against the appellants alleging various tort claims arising out of fraud and other torts allegedly committed by EnviroWave and the Duncan Defendants. Plaintiffs alleged that EnviroWave made knowing, material misrepresentations with the intent of inducing FWD:Power, TCG, and the Curry Trust to rely upon those misrepresentations, thereby inducing the plaintiffs into forming EER.  Plaintiffs claimed that EnviroWave engaged in a conspiracy with the Duncan Defendants and E620 to conceal claims that it was owed more than $2 million for the Ashtabula Assets.   Plaintiffs further claimed that EnviroWave intentionally interfered in EER's business relationships (of which FWD:Power was an investor and one-third owner), by making fraudulent misrepresentations regarding the $2 million debt and by not allowing the transfer or

movement of the Ashtabula Assets.  The complaint alleged that all these actions were made with the intent to induce the plaintiffs to rely upon them, to form EER, and to proceed with the purchase, relocation, and operation of a tire system plant in Franklin County.

{¶ 13}  EnviroWave moved to compel arbitration and to dismiss or stay litigation based on the arbitration clauses contained in EnviroWave's December 21, 2011 agreement with Franklic's and EnviroWave's March 4, 2011 agreement with FWD:Power.  The matter was fully briefed and argued before the trial court.  The trial court concluded that the connection, if any, between the arbitration provisions and the actual claims before the trial court was "too tenuous."  Entry dated December 11, 2012 Denying Motion to Compel Arbitration, at 2.  The trial court stated that the agreements were between entities that either were not parties to the suit or were not implicated in plaintiffs' claims.

{¶ 14}  This appeal followed.

### Assignments of Error

{¶ 15}  Appellants have assigned the following as errors:

> 1.  The trial court erred by failing to recognize that Appellee Entire Energy & Renewables, LLC ("EER") was a contemplated and specifically identified third-party beneficiary of one of the Agreements and therefore subject to its arbitration provision.
>
> 2.  The trial court erred by failing to apply the arbitration clause broadly and should have found that tort claims asserted in the underlying case were covered under the arbitration provision consistent with the strong presumption favoring arbitration.
>
> 3.  The trial court erred by failing to apply the correct analysis identified by this Court and the Ohio Supreme Court — namely, that a lawsuit must be arbitrated if it cannot be maintained without reference to the contract that contains the arbitration provision.
>
> 4.  The trial court erred when it overlooked the undisputed fact that at least two of the claims were already being prosecuted in a pending and ongoing arbitration initiated by Appellee FWD:Power, LLC ("FWD:Power") against Appellants.

### Standards of Review and Arbitrability

{¶ 16} The question of whether an agreement creates a duty for the parties to arbitrate is a question of law, and the standard of review on appeal is de novo. *Stromberg v. Ltd. Brands, Inc.*, 10th Dist. No. 09AP-702, 2010-Ohio-1994, ¶ 10; *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661 (1998).

{¶ 17} Ohio and federal courts recognize four principles that guide arbitrability: (1) that arbitration is a matter of contract and a party cannot be required to so submit to arbitration any dispute which he has not agreed to so submit; (2) that the question whether a particular claim is arbitrable is one of law for the court to decide; (3) that when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and (4) that when a contract contains an arbitration provision, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.,* 108 Ohio St.3d 185, 2006-Ohio-657, ¶ 10-14.

{¶ 18} A corollary to the fourth principle is that in determining whether a cause of action is within the scope of an arbitration agreement, a state court in Ohio may base that determination on a federal standard that inquires whether the action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.

### Third-Party Beneficiary

{¶ 19} In its first assignment of error, EnviroWave asserts that EER was a third-party beneficiary of the Franklic Agreement, and therefore bound under the contract's arbitration provision.

{¶ 20} In *Transcontinental Ins. Co. v. Exxcel Project Mgt., Inc.*, 10th Dist. No. 04AP-1243, 2005-Ohio-5081, ¶ 19-20, we explained the concept of a third-party beneficiary. Also, as this court stated in *Berge v. Columbus Community Cable Access*, 136 Ohio App.3d 281 (10th Dist.1999):

> A third-party beneficiary is one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise. *Chitlik v. Allstate Ins. Co.* (1973), 34 Ohio App.2d 193, 196 * * * An intended beneficiary has enforceable rights under the contract, in contrast to an incidental beneficiary, who has no rights of enforcement. *Hill v. Sonitrol of Southwestern Ohio* (1988), 36 Ohio St.2d 36, 40. * * * To have an intended beneficiary, the contract must be entered into with the intent to benefit that person. *Doe v. Adkins* (1996), 110 Ohio App.3d 427, 436.

*Id.* at 303. "Thus, where the performance of a promise under the contract satisfies a duty owed by the promisee to the third-party beneficiary, he or she is an intended beneficiary, but where the performance of a promise merely confers some benefit and is not in satisfaction of a duty, the third-party beneficiary is an incidental beneficiary." *Transcontinental* at ¶ 20.

{¶ 21} Here, EER is not a signatory to the Franklic Agreement. It may have been the intention of the parties to benefit EER under the contract, but the actual wording of the agreement does not give EER any rights under the contract. The key portion of the agreement that names EER provides, in pertinent part, as follows:

> 2.4 EnviroWave acknowledges that Franklic, LLC intends to form additional entities to operate the Equipment and Tire Systems to produce the Product in the Territory, the ownership of which will vary. Franklic, LLC *may* sublicense its rights for the processing of scrap tire shards within [Franklin County, Ohio] only to the joint venture Entire Energy & Renewables, LLC. This joint venture may not further license or sublicense any rights associated with the Technology. Franklic, LLC may sublicense its rights for the processing of plastics and the processing of shingles to additional entities, subject to the prior written approval by EnviroWave, the consent for which shall not be unreasonably withheld.

(Emphasis added.)

{¶ 22} The "may" language in section 2.4 does not create any enforceable rights under the Franklic Agreement for EER. If FWD:Power decided not to sublicense its rights to operate the plant and instead chose to construct and operate the plant under its own license, EER would have no recourse under the Franklic Agreement to demand that

FWD:Power grant it a sublicense. Nor would EER have any claim under the contract against EnviroWave. Thus, EER had no rights under the contract that it could enforce, and consequently is not an intended beneficiary to the Franklic Agreement.

{¶ 23} Another reason EER is not bound under the Franklic Agreement is that EER is not asserting claims that arose under the agreement, but rather claims that sound in tort.

{¶ 24} In *Jankovsky v. Grana-Morris*, 2d Dist. No. 2000-CA-62 (Sept. 7, 2001), children of an account holder brought an action against a brokerage firm based on the tort of interference with an expectancy of inheritance or gift. The court addressed the argument that an account holder's children were bound under an arbitration clause because their lawsuit arose from their status as third-party beneficiaries. The court indicated the issue was not whether the children had standing to bring an action as third-party beneficiaries; instead, the issue was whether they were asserting their claims on that basis. While acknowledging that parties cannot avoid arbitration by casting contract claims as torts, the court stated that a tort claim does not become contractual simply because an element of proof may relate to a contract. As non-signatories to the agreement containing the arbitration clause, their claims sounded in tort and were not based on the contracts containing arbitration clauses. Therefore, regardless of their status as third-party beneficiaries, the children were not subject to the contractual arbitration provisions. *Id.*

{¶ 25} Here, there can be no application of the arbitration clause in the first license agreement between FWD:Power and EnviroWave executed in March 2011. As the Supreme Court of Ohio has stated, "the existence of a contract between the parties does not mean that every dispute between the parties is arbitrable." *Academy of Medicine of Cincinnati*, 2006-Ohio-657 at ¶ 29. Under that agreement, FWD:Power is not licensed to operate EnviroWave's technology in Ohio. FWD:Power's involvement in the Franklin County project is limited to its minority ownership of EER. EER could not have been a third-party beneficiary to the March 2011 agreement because EER had not yet been formed at the time FWD:Power and EnviroWave entered into the agreement. Therefore, the March 2011 agreement has no application to the claims in this case.

{¶ 26} Because EER is no more than an incidental beneficiary under the Franklic Agreement and is not involved at all in the FWD:Power/EnviroWave Agreement, the arbitration provisions in those agreements do not bind EER to arbitrate its claims.

{¶ 27} We recognize that arbitration is not limited to claims alleging breach of contract and that creative pleading cannot overcome a broad arbitration provision. *Id.* at ¶ 19. However, the overarching issue is whether the parties agreed to arbitrate the issue. *Id.* Furthermore, none of the claims arise out of any performance obligation under the contracts. The first assignment of error is overruled.

### *Use of the Correct Presumptions and Standards*

{¶ 28} In its second assignment of error, EnviroWave asserts that the trial court failed to apply the arbitration clause broadly and consistently with the strong presumption favoring arbitration.

{¶ 29} There exists a strong public policy in favor of arbitration, but not in any or all circumstances. "Ohio and federal courts encourage arbitration to settle disputes." *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 500 (1998). This presumption applies to parties to the agreement, " ' "and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." ' " *Council of Smaller Enterprises,* at 665, quoting *AT&T Technologies* at 648-69, quoting *United Steelworkers of Am. v. Warrior & Gulf Nav.*, 363 U.S. 574, 582 (1960). There can be no presumption in favor of arbitration if the party in litigation has not agreed to submit its disputes to arbitration. If a party has not signed an arbitration agreement, a presumption arises against arbitration. *Id.*; *State ex rel. Rogers v. Philip Morris, Inc.,* 10th Dist. No. 06AP-1012, 2008-Ohio-3690, ¶ 19.

{¶ 30} Here, EER is a non-signatory to the contracts containing arbitration clauses. Thus, there is no presumption in favor of arbitration when construing the contracts at issue. The trial court was not required to interpret the arbitration clause broadly and consistently with the presumption of arbitrability. In fact, the presumption against arbitrability applied since EER was not a signatory to the agreements. The second assignment of error is overruled.

{¶ 31} In their third assignment of error, EnviroWave claims the arbitration clauses at issue were written with extremely broad language and, therefore, if the lawsuit cannot be maintained without reference to the license and sublicense provided under the

Franklic Agreement, the action must be covered under the arbitration proceeding. In support of this argument, Envirowave believes the analysis in *Academy of Medicine of Cincinnati*, 2006-Ohio-657*; Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003), applies to the instant case.

{¶ 32} In both of those cases, the parties to the agreements containing broad arbitration provisions were the parties in litigation. In *Fazio*, the plaintiffs were account holders who had brokerage account agreements that contained arbitration clauses. The plaintiffs filed suit against the brokerage houses that had employed a stockbroker engaged in a massive fraud scheme. They alleged securities laws violations, theft, churning, unauthorized trading, and excessive risk taking. The court stated that even real torts can be covered by arbitration clauses if the allegations underlying the claims touch matters covered by the agreement. *Id.* at 395. The court agreed and remanded the matter for a determination of whether the arbitration clauses, analyzed independently from the account agreements, were valid.

{¶ 33} In *Academy of Medicine of Cincinnati*, 2006-Ohio-657, the plaintiffs were the Academy of Medicine, the Butler County Medical Society, and various physicians. They sued a large HMO, alleging conspiracy to maintain artificially low reimbursement rates in violation of Ohio antitrust provisions. The HMO moved to compel arbitration based on a broad arbitration clause in the physicians' provider agreements with the HMO.

{¶ 34} The Supreme Court of Ohio found the federal *Fazio* analysis to be consistent with Ohio law, interpreting the test as whether the action could be maintained without reference to the contract or relationship at issue. It found the claims to be within the scope of a broadly worded arbitration provision that covered any disputes about the parties' business relationships.

{¶ 35} The crucial distinction between those cases and the instant case is that EER was neither a party nor an intended beneficiary under the license agreements. EER never agreed to arbitrate anything. EER's status as an incidental beneficiary means that it could not enforce any provisions of the Franklic Agreement, therefore it could not be bound by any arbitration provision within the Franklic Agreement.

{¶ 36} We are not aware of cases involving non-signatories, or non-third-party beneficiaries to have an arbitration clause construed in the manner of *Fazio* and *Academy*

*of Medicine of Cincinnati*, even an extremely broad provision.  The primary issue remains as whether the parties intended to arbitrate the claims.

{¶ 37}   The third assignment of error is overruled.

### *Ongoing Arbitration*

{¶ 38} In its fourth assignment of error, EnviroWave argues that it was error for the trial court to overlook the fact that FWD:Power was asserting the same fraud and tortuous interference claims in an arbitration initiated by FWD:Power as well as making the same claims in the instant action.

{¶ 39} FWD:Power and EnviroWave entered into a licensing agreement for territories other than Franklin County, Ohio.  FWD:Power invoked the arbitration process for claims arising under that license agreement.  Those claims are distinct from the tort claims in this case which were brought by FWD:Power, not as licensee, but as an investor and one-third owner of EER, and who was not bound by the Franklic Agreement that covered the Franklin County, Ohio territory.

{¶ 40} The fourth assignment of error is overruled.

{¶ 41} Having overruled the four assignments of error raised in the case, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT, P.J., and T. BRYANT, J., concurs.

T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under the authority of Ohio Constitution, Article IV, Section 6(C).

————————————