[Cite as *U.S. Acute Care Solutions, L.L.C. v. Doctors Co. Risk Retention Group Ins. Co.*, 2024-Ohio-605.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| U.S. ACUTE CARE SOLUTIONS, LLC. | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
|    Plaintiff-Appellant | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| THE DOCTORS COMPANY RISK<br>RETENTION GROUP INSURANCE<br>COMPANY | Case No. 2023 CA 00084 |
|    Defendant-Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Case No. 2023 CV 00510

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     February 15, 2024

APPEARANCES:

For Plaintiff-Appellant

CRAIG G. PELINI
PELINI, CAMPBELL & RICHARD
Bretton Commons - Suite 400
8040 Cleveland Avenue NW
North Canton, Ohio 44720

ANTHONY F. STRINGER
K. JAMES SULLIVAN
CALFEE, HALTER & GRISWOLD LLP
1405 East Sixth Street
Cleveland, Ohio 44114-1607

For Defendant-Appellee

ANECA E. LASLEY
ICE MILLER LLP
250 West Street
Suite 700
Columbus, Ohio 43215-7509

*Wise, J.*

{¶1}    Appellant U.S. Acute Care Solutions, LLC, appeals the July 12, 2023, decision of the Stark County Court of Common Pleas granting a Motion to Stay Proceedings and Compel Arbitration filed by Appellee The Doctors Company Risk Retention Group Insurance Company.

<u>STATEMENT OF THE FACTS</u>

{¶2}    This action arises out of claim for insurance bad faith claims handling.

{¶3}    The facts and procedural history relevant to this appeal are as follows:

{¶4}    Appellant U.S. Acute Care Solutions, LLC (USACS), is a Delaware company, with its principal place of business in Canton, Ohio. USACS provides emergency care services to health care systems across the United States. Appellee, The Doctors Company Risk Retention Group Insurance Company (TDC), is an insurance company located in Napa, California.

{¶5}    From October 1, 2017, through October 1, 2019, TDC was USACS' medical malpractice insurer.

{¶6}    In January, 2020, David Klein filed a medical malpractice lawsuit in Stamford, Connecticut Superior Court against Emergency Medicine Physicians of New Haven County, LLC and Dr. Lyncean Ung (collectively, USACS' Insureds).  The Complaint generally alleges that Mr. Klein went to the emergency room at Stamford Hospital complaining of chills, fever and shaking. While at the hospital, he developed gangrene on his feet and fingers from a bacterial infection. Approximately one month later, Mr. Klein left the hospital with both legs amputated below the knee and nine of his fingers partially amputated. Specifically, Mr. Klein alleged that Dr. Ung "failed to timely

and properly evaluate, diagnose, and treat Mr. Klein's sepsis, which was allowed to progress unchecked and untreated for an unreasonable period of time, resulting in DIC and related sequelae, including amputations of Mr. Klein's legs and portions of his fingers" and "failed to properly and timely ensure that David Klein received timely treatment with antibiotics."

{¶7} USACS, whose insured parties had been sued in the medical malpractice case, had a malpractice insurance policy with TDC with a policy number of 1519815. USACS tendered the lawsuit to TDC, which accepted coverage. TDC then opened a claim and assigned a claims specialist to handle the claim process, including attending a mediation.

{¶8} In December, 2022, after two years of litigation, Mr. Klein reduced his settlement demand to an amount within policy limits, with the caveat that it expired on December 31, 2022.

{¶9} After initial and repeated attempts at resolution of the underlying medical malpractice claim were unsuccessful, allegedly due to extra-contractual bad faith actions by TDC, USACS' insured parties were forced to self-fund a settlement of the malpractice claim or else face the potential risk of a verdict in excess of the limits of coverage under the malpractice insurance policy.

{¶10} On March 17, 2023, USACS filed a Complaint in the Stark County Court of Common Pleas alleging a single count of Bad Faith Claims Handling against TDC to recover the amount of its settlement payment.

{¶11} On April 20, 2023, TDC moved to stay this action and compel arbitration pursuant to an arbitration endorsement in its insurance policy. USACS opposed the

motion arguing that its tort claim does not fall within the scope of TDC's arbitration endorsement.

**{¶12}** By Judgment Entry filed July 12, 2023, the trial court granted the motion.

**{¶13}** It is from this decision Appellant now appeals, raising the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

**{¶14}** "I. THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION BASED ON ITS CONSTRUCTION OF AN ARBITRATION ENDORSEMENT TO APPELLEE'S INSURANCE POLICY."

**I.**

**{¶15}** In its sole assignment of error, Appellant argues the trial court erred in granting Appellee's motion to stay the proceedings and compel arbitration. We agree.

**{¶16}** Appellant's assignment of error focuses upon the interpretation and application of an arbitration clause contained within the insurance policy. When reviewing a challenge to an arbitration clause, the appropriate standard of review depends on "the type of questions raised challenging the applicability of the arbitration provision." *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, 2012 WL 1142880, ¶ 7. Whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide; therefore, the standard of review on those issues is *de novo. Church v. Fleishour Homes, Inc.,* 5th Dist., 172 Ohio App.3d 205, 2007-Ohio-1806, 874 N.E.2d 795, ¶ 9. "Under a *de novo* standard of review, we give

no deference to a trial court's decision." *Hedeen v. Autos Direct Online, Inc.,* 8th Dist., 2014-Ohio-4200, 19 N.E.3d 957, ¶ 9 (Citations omitted).

**{¶17}** "Ohio courts recognize four principles that guide arbitrability[.]" *Entire Energy & Renewables, LLC v. Duncan,* 2013-Ohio-4209, 999 N.E.2d 214, ¶ 17 (10th Dist.), quoting *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 10-14. They are:

> (1) that arbitration is a matter of contract and a party cannot be required to so submit to arbitration any dispute which he has not agreed to so submit; (2) that the question whether a particular claim is arbitrable is one of law for the court to decide; (3) that when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and (4) that when a contract contains an arbitration provision, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

**{¶18}** In the instant case, the insurance policy contained the following change endorsement:

> "Any dispute between you and us relating to this Policy (including any disputes regarding our contractual obligations) will be resolved by binding arbitration in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association. ***"

**{¶19}**  Prior to this change endorsement, the original policy contained the following arbitration clause:

**{¶20}**  "Any dispute between you and us relating to this Policy (including any disputes regarding our extra-contractual obligations) will be resolved by binding arbitration in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association."

**{¶21}**  Appellee argues that because the parties agreed to arbitrate any dispute that "relat[es] to" the policy and because Appellant is arguing that Appellee breached its duty of care owed to it, the only source of the duty must be the policy. Therefore, the bad faith claim is a dispute which relates to the policy and as such, is subject to binding arbitration.

**{¶22}**  Appellant herein argues that its bad faith claims handling claim does not fall within the scope of the arbitration endorsement contained in the Policy because it is not based upon, nor relies upon, any language in the insurance policy.

**{¶23}**  In its decision, the trial court found:

Plaintiff and Defendant's relationship arises out of the insurance policy at issue and there is no duty to act in good faith, or claim for bad faith for that matter, in the absence of the insurance policy. Given the nature of Plaintiff's single claim against Defendant, the Court therefore cannot conclude that Plaintiff's bad faith insurance claim exists in a vacuum without reliance upon the underlying contractual insurance policy relationship.

**{¶24}**  (7/12/2023, Judgment Entry at 6).

**{¶25}** On November 1, 2023, subsequent to the filing of the briefs in this matter, the Ohio Supreme Court decided *Scott Fetzer Co. v. Home Assur. Co., Inc.,* Slip Opinion No. 2023-Ohio-392.

**{¶26}** In *Scott Fetzer,* the issue before the Court was which choice-of-law rule applies to an insurance bad faith claim. The insurer argued that a bad faith claim is inseparable from an insurance contract because the contract creates the claim. Therefore, a bad faith claim is one of the "rights created thereby" under Section 193. *Id.* at 19-20. In *Scott-Fetzer*, Traveler's Insurance also contended that a bad-faith claim should be viewed as arising out of a contract because, unlike a typical tort claim, a bad-faith claim can be brought only by one contracting party against another.

**{¶27}** The insured argued that an insurer's duty to act in good faith is not one of the "rights created thereby," because a bad faith claim is a tort, which arises by operation of law. *Id.* at 21. The Court agreed stating:

> We disagree with Travelers' argument that a bad-faith claim is one of the "rights created thereby." That a bad-faith claim can be litigated only between the parties to an insurance contract does not mean that the contract creates it. Importantly, a bad-faith claim is not rooted in any particular text of the contract. Instead, as we explained in *Hoskins [ v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983)]*, it arises by operation of law:
>
> The liability of the insurer [on a bad-faith claim] does not arise from its mere omission to perform a contract obligation, for it is well established in Ohio that it is no tort to breach a contract, regardless of motive. * * * Rather, the liability ari*ses from the breach of the positive legal duty imposed by law due to the relationships*

*of the parties. * * * * This legal duty is the duty imposed upon the insurer to act in good faith and its bad faith refusal to settle a claim is a breach of that duty and imposes liability sounding in tort.*

(Emphasis added.) *Hoskins* at 276, 452 N.E.2d 1315. Consequently, the existence of an insurance contract is what causes the common-law rule to apply to particular entities.

**{¶28}** (*Scott-Fetzer* at 5, ¶23)

**{¶29}** Based on the holding of *Scott-Fetzer*, *supra*, we find that an insurance bad-faith claim is not rooted in any particular text of the contract; instead, it arises by operation of law. We therefore find that Appellant's bad faith handling tort claim is an extra-contractual matter to which the arbitration endorsement in the insurance contract is not applicable.

**{¶30}** Appellants' first assignment of error is sustained.

**{¶31}** For the reasons stated in the foregoing opinion, the judgment of the Stark County Court of Common Pleas is reversed and remanded to the trial court for further proceedings consistent with the law and this opinion.

By: Wise, J.
Delaney, P. J., and
Gwin, J., concur.

JWW/kw 0213