[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *U.S. Acute Care Solutions, L.L.C. v. Doctors Co. Risk Retention Group Ins. Co.*, "Slip Opinion" No. 2025-Ohio-5010.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5010

U.S. ACUTE CARE SOLUTIONS, L.L.C., APPELLEE, *v.* DOCTORS COMPANY RISK RETENTION GROUP INSURANCE COMPANY, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *U.S. Acute Care Solutions, L.L.C. v. Doctors Co. Risk Retention Group Ins. Co.*, "Slip Opinion" No. 2025-Ohio-5010.]**

*Civil law—Insurance—Arbitration agreements—The presumption of arbitrability applies to a bad-faith insurance-handling claim when the arbitration agreement contains a broad clause and the underlying civil action could not be maintained without referring to the insurance policy or the relationship between the insurer and the insured—Court of appeals' judgment reversed.*

(No. 2024-0450 —Submitted April 2, 2025—Decided November 6, 2025.)

Appeal from the Court of Appeals for Stark County,

No. 2023 CA 00084, 2024-Ohio-605.

_____

HAWKINS, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, and SHANAHAN, JJ., joined.

**HAWKINS, J.**

{¶ 1} In this case, we consider whether an arbitration agreement in an insurance policy applies to a legal dispute alleging bad-faith insurance-claim handling, which is considered a tort claim under Ohio law.

{¶ 2} We find that the arbitration agreement at issue here is a broad clause and thus a presumption of arbitrability applies to the bad-faith claim, that the presumption has not been overcome, and that the underlying civil action could not be maintained without referring to the insurance policy or the relationship between the insurer and the insured. Accordingly, we hold that the arbitration agreement applies in this case. Because the Fifth District Court of Appeals held otherwise, we reverse its judgment remanding the case to the trial court and reinstate the judgment of the trial court compelling the parties to submit the dispute to arbitration.

## BACKGROUND

{¶ 3} Appellant, The Doctors Company Risk Retention Group Insurance Company ("TDC"), is an insurance company located in Napa, California. It provided a medical-malpractice insurance policy ("the policy") to appellee, U.S. Acute Care Solutions, L.L.C. ("USACS"), a Delaware company with its principal place of business in Canton, Ohio. USACS provides emergency-care services to healthcare systems throughout the United States.

{¶ 4} In January 2020, a patient filed a medical-malpractice lawsuit against USACS in a Connecticut state court. USACS submitted the claim to TDC, which accepted coverage under the policy and retained counsel to defend USACS's named insureds.

{¶ 5} The parties disagreed on a settlement strategy during litigation of the medical-malpractice suit, and in December 2022, USACS agreed to self-fund a settlement with the claimant to avoid facing the potential risk of a verdict being rendered at trial in excess of the limits of coverage under the policy.

{¶ 6} USACS sued TDC in March 2023 in the Stark County Court of Common Pleas in Ohio, alleging a single claim of bad-faith insurance-claim handling and seeking to recover the amount of its self-funded settlement payout in the Connecticut lawsuit, plus additional costs and fees.

{¶ 7} The policy originally contained the following arbitration clause: "Any dispute between [USACS] and [TDC] relating to this Policy (including any disputes regarding [TDC's] *extra-contractual obligations*) will be resolved by binding arbitration . . . ." (Emphasis added). This initial arbitration provision was superseded by a change endorsement that states:

**CHANGE ENDORSEMENT**
**BINDING ARBITRATION**

In consideration of the premium charged, Policy **Section VIII: General Rules**, item **n. Binding Arbitration** is deleted and replaced with the following:

Any dispute between [USACS] and [TDC] relating to this Policy (including any disputes regarding [TDC's] contractual obligations) will be resolved by binding arbitration in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association.

(Boldface and capitalization in original.)

{¶ 8} TDC filed a motion to stay proceedings in the trial court and compel arbitration under the policy's arbitration clause as set forth in the change endorsement. The trial court granted the motion.

{¶ 9} USACS filed a notice of appeal to the Fifth District, which relied on this court's holding in *Scott Fetzer Co. v. Am. Home Assur. Co., Inc.*, 2023-Ohio-3921, in reversing the trial court's judgment and holding that because a claim for

bad-faith insurance-claim handling is a tort that arises by operation of law, USACS's claim against TDC is not subject to arbitration under the policy. *See* 2024-Ohio-605, ¶ 29 (5th Dist.). The Fifth District held that the allegation of bad-faith insurance-claim handling was "an *extracontractual* matter to which the arbitration endorsement in the insurance contract is not applicable." (Emphasis added) *Id.*

{¶ 10} TDC appealed, and we accepted the following propositions of law for review:

> Proposition of Law [No. 1]: *Scott Fetzer* was limited to determining which choice-of-law rule applied to bad-faith insurance claims and recognized that bad-faith insurance claims are related to the underlying insurance contracts.
>
> Proposition of Law [No. 2]: The [Fifth District's] Opinion disregards Ohio's presumption of arbitrability, as well as the plain text of the Arbitration Provision, which applies to "any dispute between" USACS and TDC[].

(Underlining in original.)

## ANALYSIS

{¶ 11} It is well settled that both Ohio courts and the General Assembly "have expressed a strong public policy favoring arbitration." *Hayes v. Oakridge Home*, 2009-Ohio-2054, ¶ 15. In light of the public policy favoring arbitration, "all doubts should be resolved in its favor." *Id.*, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 2007-Ohio-1947, ¶ 18.

{¶ 12} In *ABM Farms, Inc. v. Woods*, we held that R.C. 2711.01 "generally acknowledges that an arbitration clause is, in effect, a contract within a contract." 1998-Ohio-612, ¶ 12. Further, our legal standards for the interpretation of contracts

4

are well established: "We seek primarily to give effect to the intent of the parties, and we presume that the intent of the parties is reflected in the plain language of the contract." *Beverage Holdings, L.L.C.*, *v. 5701 Lombardo, L.L.C*, 2019-Ohio-4716, ¶ 13, citing *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11.

{¶ 13} To determine whether a legal dispute falls within the scope of an arbitration clause, we have held that a court must "'classify the particular clause as either broad or narrow.'" *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 18, quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001), *overruled in part by Local Union 97, Internatl. Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 112-114 (2d Cir. 2023). Generally, an arbitration clause that contains the phrase "'""any claim or controversy arising out of or relating to the agreement'" is considered "the paradigm of a broad clause."'" *Id.* at ¶ 18, quoting *ADR/JB, Corp. v. MCY III, Inc.*, 299 F.Supp.2d 110, 114 (E.D.N.Y. 2004), quoting *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).

{¶ 14} Importantly, the breadth of such a clause means that "[a]rbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as something other than contractual cannot overcome a broad arbitration provision. The overarching issue is whether the parties agreed to arbitrate the issue." *Id.* at ¶ 19, citing *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

{¶ 15} Further, we have adopted certain principles from the United States Supreme Court for reviewing decisions concerning a legal dispute's arbitrability. Relevant to this case is the principle that "'where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."'"

*Council of Smaller Ents. v. Gates, McDonald & Co.*, 1998-Ohio-172, ¶ 24, quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986), quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960). In other words, a presumption of arbitrability exists, and a court should deny a party's request to compel arbitration, only if the arbitration clause cannot reasonably be read to cover the dispute in question. To determine whether the presumption of arbitrability has been overcome, we ask "'whether, because of express exclusion or other forceful evidence, the dispute . . . is not subject to the arbitration clause.'" *Id.* at ¶ 30, quoting *AT&T Technologies, Inc.* at 652.

{¶ 16} The United States Court of Appeals for the Sixth Circuit in *Fazio v. Lehman Bros., Inc.*, held that "[a] proper method of analysis . . . is to ask if an action could be maintained without reference to the contract or relationship at issue." 340 F.3d 386, 395 (6th Cir. 2003). In *Aetna Health*, we expressly adopted the *Fazio* test to determine whether a legal dispute falls within the scope of an arbitration agreement, holding that "a state court in Ohio may base that determination on a federal standard that inquires whether the action could be maintained without reference to the contract or relationship at issue." *Aetna Health*, 2006-Ohio-657, at ¶ 30.

{¶ 17} Finally, the federal circuit court in *Fazio* made clear that this analysis reaches beyond contract claims: "Even real torts can be covered by arbitration clauses '[i]f the allegations underlying the claims "touch matters" covered by the [agreement].'" (Second set of bracketed text added in *Fazio*.) *Fazio* at 395, quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987); *see also Alexander v. Wells Fargo Fin. Ohio 1 Inc.*, 2009-Ohio-2962, ¶ 24 quoting, *Fazio* at 395.

{¶ 18} Our decision in *Scott Fetzer* focused on the choice-of-law analysis to be applied in cases involving bad-faith insurance-claim handling. 2023-Ohio-

3921 at ¶ 1. In that case, we held that bad-faith claims are considered to be tort claims and thus arise by operation of law. *Id.* at ¶ 22-23. *Scott Fetzer*, however, does not stand for the proposition that such claims cannot be subject to arbitration, provided the parties agreed to submit such claims to arbitration under the plain language of the applicable contract. *Id.* at ¶ 23.

{¶ 19} Under the standard articulated in *Aetna Health*, the policy language at issue here is properly construed as a broad arbitration clause. *See Aetna Health*, 2006-Ohio-657, at ¶ 18-19. Thus, there exists a strong presumption of arbitrability that should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *See Council of Smaller Ents.*, 1998-Ohio-172, at ¶ 30.

{¶ 20} USACS has not overcome the presumption of arbitrability in this case, because it has not identified an express exclusion or other forceful evidence that a claim for bad-faith insurance-claim handling falls outside the scope of the arbitration clause in the policy. The policy's original arbitration clause required arbitration of "disputes regarding [TDC's] extra-contractual obligations," but that language was later deleted and replaced by the change endorsement providing for arbitration of any dispute relating to the policy, "including any disputes regarding [TDC's] contractual obligations." And nothing in the change endorsement shows an intent to expressly exclude legal disputes regarding bad-faith insurance-claim handling from arbitration. The language in the change endorsement plainly covers the legal dispute at issue here.

{¶ 21} Finally, USACS's claim of bad-faith insurance-claim handling could not be maintained without referring to the policy or the relationship between TDC as the insurer and USACS as the insured. The Fifth District's reliance on *Scott Fetzer* to exclude from the policy's arbitration provision extra-contractual claims such as those for bad-faith insurance-claim handling is misplaced. The plain language of the provision requiring arbitration of "any dispute," combined with

application of the *Aetna Health* standard, compels arbitration of USACS's claim against TDC.

## CONCLUSION

**{¶ 22}** We reverse the judgment of the Fifth District Court of Appeals and reinstate the trial court's judgment compelling the parties to submit the dispute to arbitration.

Judgment reversed.

_____

Pelini, Campbell & Ricard, L.L.C., and Craig G. Pelini; and Calfee, Halter & Griswold, L.L.P., Anthony F. Stringer, K. James Sullivan, and Sage X. Wen, for appellee.

Ice Miller, L.L.P., Aneca E. Lasley, and Jenny R. Buchheit, for appellant.

_____